# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES,**<br>vs.<br>**RUSSELL HARRISON.** | No. 18-Cr.-59<br>Hon. Richard J. Leon |

## MEMORANDUM IN AID OF SENTENCING

Defendant Russell Harrison, through undersigned counsel, submits this Supplemental Memorandum in Aid of Sentencing at the Court's invitation in the May 1, 2019 hearing.

At the hearing, the Court made it clear that it intends to impose a sentence on Mr. Harrison above the U.S. Sentencing Guidelines range of 60 months in prison. "[T]he only issue before the Court is whether a variance upward is warranted under the facts in this case and if so, how much.  Those are the only two questions." Tr. 5/1/19, 26 – 27. "If you want to argue to me that 60 months is appropriate in this case, … I'm telling you in fairness to you you're wasting your time." *Id.* at 23.

The government's answer is that the Court should sentence Defendant to 11 years in prison, over twice the applicable Guidelines sentence. At the hearing, the government argued that such a large upward variance is warranted because,

> If I have zero prior convictions, criminal history score of zero, I commit a violation of 924(c), I have the exact same guideline range as Mr. Harrison. The exact same guideline range.
>
> … Sixty months. If … I'm a criminal with a criminal history score of Mr. Harrison, I have nine points. I committed a 924(c) with one firearm … I'm treated identical to Mr. Harrison, who has six firearms and drum magazines and all the arsenal he had in his residence. If I have 24 zips of crack and a firearm on me for 924(c), I'm treated the same as Mr. Harrison, who had six firearms and was involved in a large scale narcotics conspiracy that this Court has presided over for a year.

Tr. 5/1/2019, 5 – 6. "The guideline range is 60 months. It doesn't matter what other calculation. The benefit of the 924(c), and U.S. probation will agree, they don't have to calculate the

convictions." *Id.* at 31. "Especially when there's no criminal history calculation. Makes no difference it's 60 months. It goes ultimately to the point of the first offender committing a 924(c) having 60 months the same as Mr. Harrison. Completely irrelevant." *Id.* at 33.

When asked the basis for its request for an 11-year sentence, the government said,

There's no mathematical calculation. Having presided over sentencings for a couple of years in this courthouse varying amongst the different defendants I've seen with 924(c)s, I thought 11 years was appropriate. It was somewhere a balance between what somebody would receive as an armed career offender, 15 years, and a sentence that I normally see when a 924(c) connected with a drug case similar to Mr. Harrison somewhere in between.

And I think not an exact science applying a sliding scale I thought 11 years was appropriate in the sense that for all [intents and] purposes, Mr. Harrison did want to plead guilty … early. He knew what the compromise was that the government wasn't going to charge him as an armed career offender in Maryland and 11 years was somewhere in the balance.

*Id.* at 8 – 9.

In response to Defendant's objection to the government's use of the armed career criminal statute as the frame of reference, the Court said:

he tried to explain to the court to the best of his ability the balancing he did as to … increas[e] the sentence in … the direction of armed career, but not equal to an armed career offender. And that's all. He was using this yardstick I guess in essence to do a comparative evaluation of what might be a fair sentence in this case.

*Id.* at 19.

The government is using the wrong "yardstick," and the sentence it proposes cannot be considered by any reasonable measure to be "fair."

The Sentencing Guidelines provide a formula, if not a "mathematical calculation," to guide the Court in applying an upward variance in this case, and that is the "yardstick" the Court should use. In U.S.S.G. § 2K2.1(b)(1), the U.S. Sentencing Commission has provided a rational way to factor in possession of multiple firearms. Because § 2K2.1 allows Chapter Four criminal history adjustments, it can serve as a guide for including Mr. Harrison's criminal history as well.

Therefore, the Court should reject the government's "sliding scale" approach based on the anecdotal experience of one prosecutor over "a couple of years in this courthouse."

**United States v. Harrison, Russell, 18-Cr.-59 — Page 2**

GUIDELINES PUNISHMENT FOR VIOLATING 18 U.S.C. § 924(C)

The government is correct that U.S.S.G. § 2K2.4(c) establishes a 60-month prison sentence for a conviction under 18 U.S.C. § 924(c), the mandatory-minimum sentence under the statute. The Guidelines do not apply Chapter Three adjustments based on the defendant's role in the offense, or Chapter Four adjustments based on criminal history or livelihood.

Because § 2K2.4(c) establishes a fixed term of 60 months, the defendant's criminal history plays no role in the Guidelines calculation. As a practical matter, the Offense-Level equivalent for a person in Criminal History Category I imprisoned for 60 months would be Offense Level 24. For a person in Crim. Hist. Cat. IV, a 60-month sentence equates to Offense Level 21. The sentence the government proposes for Mr. Harrison, 132 months in prison, equates to Offense Level 29.[1]

Section 2K2.4 does not enumerate aggravating offense characteristics, such as the number of guns involved. Therefore, the Guidelines impose the same sentence on Mr. Harrison, who possessed six guns, as it would on a defendant who possessed only one gun in relation to a drug trafficking offense.

At the same time, it permits no mitigating considerations that would reduce a defendant's offense level, such as acceptance of responsibility.

As the government recognized in the hearing, Mr. Harrison agreed to plead guilty shortly after this case began. Tr. 5/1/19, 9. If he had pleaded guilty to almost any other offense that placed him at Offense Level 16 or above, he would have been eligible under U.S.S.G. § 3E1.1(a) for a two-level reduction for acceptance of responsibility, and under § 3E1.1(b) for an additional

---

[1] According to the Presentence Investigation Report filed April 24, 2019, ¶¶ 20 and 101, Mr. Harrison had 9 criminal history points when this case began, placing him in Crim. Hist. Cat. IV. Because he pleaded guilty last October in D.C. Superior Court in Dkt. No. 2018 CF3 6464, the addition of that case to his criminal history would place him in Category V. For reasons provided at the May 1 hearing, Defendant continues to assert that the 2018 assault conviction should not be counted. Tr. 5/1/19, 11 – 13. *See United States v. Murray*, 897 F.3ᵈ 298 (D.C. Cir. 2018). However, the Court has stated that it will base its sentence in part on the 2018 assault conviction. Tr. 5/1/19, 2, 13, 22. For purposes of this discussion, Defendant will use Crim. Hist. Cat. V, to demonstrate that the sentence he proposes adequately accounts for his full criminal history.

one-level reduction. But because he pleaded guilty only to the § 924(c) offense, he gets no downward adjustment.

In other words, imposition on Mr. Harrison of the 60-month Guidelines sentence set by § 2K2.4(c) is equal to the sentence that would be imposed on a defendant with a similar criminal history who pleaded guilty to a different crime for which the Guidelines establish an offense level of 22.[2] Examples include distributing 28 grams of cocaine base (U.S.S.G. § 2D1.1), or involuntary manslaughter involving reckless use of a motor vehicle (U.S.S.G. § 2A1.4).

It is, by no means, a minor sentence, even when Mr. Harrison's criminal history is taken into account. But the Court clearly intends to impose a longer term of imprisonment.

Imposition of the government's proposed 132-month sentence would be equal to the sentence following a guilty plea for a crime punished at Offense Level 30.[3] Examples include distributing 840 grams of cocaine base, an armed bank robbery of more than $1.5 million in which a person suffered serious bodily injury (U.S.S.G. § 2B3.1), or assault with intent to commit murder, where the victim received very serious injuries (U.S.S.G. § 2A2.1).

### ACCOUNTING FOR MULTIPLE FIREARMS

U.S.S.G. § 2K2.4(c) punishes use, brandishing, and carrying firearms in relation to drug trafficking crimes, as well as merely possessing firearms in relation to such crimes. Mr. Harrison possessed six firearms, ammunition, and related items in his home. But the government did not charge him with using, carrying or brandishing a gun during a drug transaction, or possession of a gun outside his residence.

In light of the facts of this case, there is a close relationship between § 2K2.4 and § 2K2.1, which punishes unlawful possession of firearms and ammunition not directly related to

---

[2] If the base offense level is 22, and the defendant in Crim. Hist. Cat. V receives a three-level reduction for acceptance of responsibility, the applicable Guidelines range would be 57 – 71 months in prison.

[3] If the base offense level is 30, and the defendant in Crim. Hist. Cat. V receives a three-level reduction for acceptance of responsibility, the applicable Guidelines range would be 120 – 150 months in prison.

violent or drug trafficking offenses. The base offense level is 20 for violation of 18 U.S.C.

§ 922(g) — being a felon in possession of a firearm. *See* § 2K2.1(a)(4). In § 2K2.1(b)(1), that

guideline provides enhancements ranging from two to 10 levels based on the number of guns the

defendant possessed.

A defendant like Mr. Harrison, who possessed six guns, would receive a two-level

increase. In the scenario described in fn. 2, his base offense level would increase to 24, and after

adjusting for acceptance of responsibility, the applicable Guidelines range would be 70 – 87

months. The government is proposing the equivalent of an eight-level increase, from Offense

Level 22 to Offense Level 30. *See fn. 3.* U.S.S.G. § 2K2.1(b)(1) applies an eight-level increase if

the defendant possesses from 100 to 199 firearms.

In conjunction with § 2K2.4(c), the guidance the U.S. Sentencing Commission provided

in § 2K2.1(b)(1) adequately accounts for the seriousness of Mr. Harrison's crime. Therefore, if

the Court applies an upward variance, it should impose a sentence of between 70 and 87 months

in prison. Such a sentence would take into account the number of guns Defendant possessed, his

early decision to plead guilty and take responsibility for his crime, and his criminal history,

including the 2018 assault at the D.C. Jail. See 18 U.S.C. § 3553(a).

The sentence the government proposes would far exceed what § 3553(a) permits. In its

attempt to justify such a long sentence, the government offers only hyperbole, and disagreement

with the D.C. Circuit's holding in *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir., 2018).

> I could be up here for an hour talking about Mr. Harrison's conduct in this case. And this was for all intents and purposes an extremely, extremely strong case. Not to mention he's there with all the firearms and all the drug trafficking apparatus and fingerprints and DNA linking him on there.

Tr. 5/1/19, 8.

> [H]e's a lifelong criminal. He is the definition of a career offender in every definition of the word except the D.C. Circuit's interpretation of what a career offender is interpreting the guidelines. If he's over in Maryland he's a career offender. Actually he's an armed career offender if he's over in Maryland.

*Id.* at 6. "

**United States v. Harrison, Russell, 18-Cr.-59 — Page 5**

I note this for the Court this is very hard to explain, but two years ago he's a career offender. Two years ago he's an armed criminal offender in Maryland because the guns in Maryland, but his guidelines are through the roof two years ago. No questions, no explanations. That's the minimum of his guidelines would be the career offender guidelines.

    And here we are [] because he pled guilty in Superior Court to attempt which having practiced in Superior Court is part of a plea bargain.

*Id.* at 9 – 10.

    In the end, the government argues that 132 months in prison is appropriate because the "compromise was that the government wasn't going to charge him as an armed career offender in Maryland and 11 years was somewhere in the balance." Tr. 5/1/19, 9.

<u>**CONCLUSION**</u>

    For the reasons stated above, in Defendant's Memorandum in Aid of Sentencing, and any others that may appear to the Court, Defendant Russell Harrison respectfully requests that the Court impose a sentence of 60 months in prison followed by a term of supervised release in accordance with 18 U.S.C. § 924(c), U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 3553(a). If the Court applies an upward variance to account for the number of firearms Mr. Harrison possessed, and his criminal history, Defendant requests that it sentence him in the range of 70 – 87 months in prison.

                    Respectfully submitted,


                    _____
                    Robert S. Becker, Esq.
                    D.C. Bar No. 370482
                    PMB #155
                    5614 Connecticut Avenue, N.W.
                    Washington, D.C. 20015
                    (202) 364-8013
                    Attorney for Russell Harrison
                    (*Appointed by the Court*)

## <u>CERTIFICATE OF SERVICE</u>

I, Robert S. Becker, counsel for Russell Harrison, certify on June 21, 2019 that all counsel in the above-captioned case are registered users of the Court's CM/ECF system and will receive service electronically.

_____

Robert S. Becker