1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLUMBIA

3    UNITED STATES OF AMERICA        .
                     Plaintiff,      .
4    vs.                             .   Docket No. 18-59-8-RJL
                                     .
5    RUSSELL HARRISON                .   Washington, D.C.
                                     .   May 1, 2019
6                     Defendant.     .
     . . . . . . . . . . . . . . . . .x
7

8                 TRANSCRIPT OF SENTENCING HEARING

9        BEFORE THE HONORABLE SENIOR JUDGE RICHARD J. LEON

10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Government:  Christopher Macchiaroli, AUSA
                          U.S. ATTORNEY'S OFFICE
13                        FOR THE DISTRICT OF COLUMBIA
                          555 Fourth Street, NW
14                        Washington, DC 20530

15
     For the Defendant:   Robert S. Becker, Esquire
16                        LAW OFFICES OF ROBERT S. BECKER
                          5614 Connecticut Avenue, NW – PMB #155
17                        Washington, DC 20015

18

19   Court Reporter:  Cathryn J. Jones, RPR
                       Official Court Reporter
20                     Room 6521, U.S. District Court
                       333 Constitution Avenue, N.W.
21                     Washington, D.C. 20001

22

23

     Proceedings recorded by machine shorthand, transcript
24   produced by computer-aided transcription.

25

**P R O C E E D I N G S**

1
2          THE DEPUTY CLERK:  Good afternoon, your Honor.
3    This afternoon we have Criminal Case 18-59-8, United States
4    of America versus Russell Harrison.  Mr. Harrison is present
5    in the courtroom, your Honor.  The probation officer present
6    for these proceeding is Ms. Rodriguez-Feleke.
7          Will counsel for the parties, please approach the
8    lectern and identify yourself for the record.
9          MR. MACCHIAROLI:  Good afternoon, your Honor,
10   Christopher Macchiaroli for the United States.  Present with
11   me today from the Federal Bureau of Investigations are
12   Special Agents Christine Rowe and Christopher Macovina as
13   well as from the U.S. Attorney's office, one of my new
14   colleagues, Andrew DeFoe.
15         THE COURT:  Welcome.
16         MR. BECKER:  Good afternoon, your Honor, Robert
17   Becker on behalf of Mr. Harrison.
18         THE COURT:  Welcome.
19         Counsel, I apologize for not realizing this
20   earlier, but there's a sentencing at Superior Court in June
21   that I will, there's no way I would sentence this man before
22   that.  The only way the Court can ensure that it has the
23   authority and the power to give a consecutive sentence is to
24   wait, and I will wait.  But today won't be wasted, so I'm
25   not sentencing him today.

1          This Court has a long track record of separate

2     time, separate crimes, separate time.  And I'm not going to

3     rely upon a Superior Court judge to make that decision.

4     That decision will be made by me after their sentence has

5     been imposed in that case.

6          But I don't want to lose the opportunity to have

7     you here to talk about the great variance between the

8     government's guideline range arguments and the defense's.

9     So I figure I'd give the government a chance to articulate

10    and answer some questions about the reason why I believe a

11    variance is necessary in this case and appropriate, and give

12    the defense a chance to oppose it, so we won't waste the

13    time.  Mr. Macchiaroli.

14          MR. MACCHIAROLI:  Yes, your Honor.  And just to,

15    before I get into the argument just to kind of give some

16    context regarding the Superior Court case.  My understanding

17    that the defendant pled guilty to two misdemeanors;

18    possession of a prohibited weapon and simple assault.

19    Maximum being six months.  Potential to run those

20    consecutive though having had experience in Superior Court,

21    seeing those consecutive, seeing those max, highly unlikely.

22          I will note that it has been extremely frustrating

23    to the government.  Because it seems like that Superior

24    Court case has just been pushed out, pushed out, pushed out.

25          THE COURT:  By the court?  Or by the government

1   or.

2            MR. MACCHIAROLI:  By the defense.  By the defense.

3   This is not a secret.  It's a public docket.  The Superior

4   Court defense motion to continue sentencing.  Defense motion

5   to continue sentencing.

6            THE COURT:  Why doesn't the judge at some point

7   say no more?  Who's the judge, same judge?

8            MR. MACCHIAROLI:  I think that case has been

9   pending for so long it has moved multiple judges on the

10   calendar.  I don't know who's on the calendar.  I say this

11   all in, your Honor, is that the government's asking for a

12   substantial sentence in this case.  The maximum over there

13   even assuming consecutive max out of all charges would be

14   one year over there.  That would be, you know, pie in the

15   sky, you know, the government's, you know, getting

16   everything it wanted would be a year.

17            I obviously can't control what the Superior Court

18   judge does, and I could imagine --

19            THE COURT:  Nor can I.

20            MR. MACCHIAROLI:  -- the defense counsel there may

21   want to push it out again.  We could have a back and forth.

22   I only say that because the government is asking for

23   substantial time here and the maximum exposure there is so

24   minimal.  And for all extensive purposes, the government is

25   arguing the facts of that guilty plea in the overall

1   characteristics of the defendant when we're asking for the

2   sentence in this case.

3           And I want to start with the fact that when we

4   presented this plea paperwork to you your first response was

5   to call me up and you were very concerned.  You were very

6   concerned why the government was giving Mr. Harrison an

7   opportunity to plead guilty to one count of 924(c), which

8   was 60 months guidelines.  You went through his entire

9   criminal history, and you talked about all the offenses and

10  you talked about how much time he had been incarcerated.

11          And I said judge, there's, there's a difference in

12  this plea paperwork than other plea paperwork we've

13  submitted to the Court.  Is that we're going to be upfront.

14  We're asking for an upward variance in this case above the

15  guidelines.  And I said to the Court then we may be asking

16  for over ten years.  And here we are asking for 11 years.

17  Because I saw what the Court's concerns were about the prior

18  convictions of Mr. Harrison and how many years he's served

19  incarcerated, and has just been absolutely unrehabilitated.

20          I mean why a variance is appropriate in this case?

21  Let's just start with the actual statute.  If I have zero

22  prior convictions, criminal history score of zero, I commit

23  a violation of 924(c), I have the exact same guideline range

24  as Mr. Harrison.  The exact same guideline range.

25          THE COURT:  Sixty months.

1              MR. MACCHIAROLI:  Sixty months.  If I even -- if

2      I'm a criminal with a criminal history score of Mr.

3      Harrison, I have nine points.  I committed a 924(c) with one

4      firearm on one I'm treated identical to Mr. Harrison, who

5      has six firearms and drum magazines and all the arsenal he

6      had in his residence.  If I have 24 zips of crack and a

7      firearm on me for 924(c), I'm treated the same as

8      Mr. Harrison, who had six firearms and was involved in a

9      large scale narcotics conspiracy that this Court has

10     presided over for a year.

11             There is a disparity between, in those

12     circumstances.  Those are concrete circumstances.  And if

13     you dig deeper in to Mr. Harrison's history, his

14     characteristics and factors he's a lifelong criminal.  He is

15     the definition of a career offender in every definition of

16     the word except the D.C. Circuit's interpretation of what a

17     career offender is interpreting the guidelines.  If he's

18     over in Maryland he's a career offender.  Actually he's an

19     armed career offender if he's over in Maryland.

20             THE COURT:  That's the Fourth Circuit.

21             MR. MACCHIAROLI:  Fourth Circuit, likewise EDDA.

22     So there is huge disparities between people being sentenced

23     for the conduct in this country based on what Mr. Harrison

24     has done.  And if you look at Mr. Harrison was committing

25     crimes before he was an adult, and he's still committing

1    crimes.  And it's not just this case.  He's stabbing

2    somebody at the DC jail over and over again with a sharp

3    object.  And this isn't me coloring the facts at sentencing,

4    that's what he pled guilty to.  That's in his factual

5    proffer over in Superior Court.

6              When you take all of that in to consideration how

7    can the government ask for just 60 months in this case?  And

8    the government followed its protocol, asked permission from

9    the committee to vary upward to the sentence it's asking for

10   11 years.

11             Now Mr. Becker has done excellent advocacy for Mr.

12   Harrison having come into the case, but in reading that 14

13   page sentencing memo and I put that in the government's

14   supplement, I don't see any explanation why he has six

15   firearms.  Nothing.  But to say I was trafficking firearms.

16   I had security.  Nothing, no explanation whatsoever.  It's

17   like they weren't there.  The only reference to the term

18   firearm is when he talks about the offense he pled guilty

19   to.  No explanation.

20             How does this Court sentence Mr. Harrison to only

21   60 months when the man had four prior felonies?  Three from

22   separate events.  One a shooting.  Two-time drug trafficker,

23   crack cocaine, PCP.  Now pled guilty to purchasing cocaine

24   and having the apparatus to cook it into crack at his

25   residence.  This case has all the check boxes for upward

1    variance; history, facts before the Court, what the

2    defendant did when he was brought before this Court,

3    stabbing somebody at the DC jail.

4          I don't know, your Honor, I could be up here for

5    an hour talking about Mr. Harrison's conduct in this case.

6    And this was for all intents and purposes an extremely,

7    extremely strong case.  Not to mention he's there with all

8    the firearms and all the drug trafficking apparatus and

9    fingerprints and DNA linking him on there.  He comes into

10   the WFO, gets booked, he's in the holding cell with the

11   other codefendants, videotaped and audio taped, nobody's

12   asking him any questions, he's talking about the guns.

13   Can't get much stronger than that.

14         For all those facts and circumstances and the

15   defendant's criminal history the government is asking for a

16   sentence of 11 years.

17         THE COURT:  How did you get to that number?

18         MR. MACCHIAROLI:  And I was thinking about you

19   asking me that question for probably about two weeks once I

20   knew the sentencing how I was going to answer that.  We've

21   talked about this.  There's no mathematical calculation.

22   Having presided over sentencings for a couple of years in

23   this courthouse varying amongst the different defendants

24   I've seen with 924(c)s, I thought 11 years was appropriate.

25   It was somewhere a balance between what somebody would

1    receive as an armed career offender, 15 years, and a

2    sentence that I normally see when a 924(c) connected with a

3    drug case similar to Mr. Harrison somewhere in between.

4              And I think not an exact science applying a

5    sliding scale I thought 11 years was appropriate in the

6    sense that for all extensive purposes, Mr. Harrison did want

7    to plead guilty.  We had that episode where he wanted to

8    withdraw his plea, but he did want to plead guilty early.

9    He knew what the compromise was that the government wasn't

10   going to charge him as an armed career offender in Maryland

11   and 11 years was somewhere in the balance.  Taking into

12   consideration --

13             THE COURT:  Remind me of his criminal history

14   category.

15             MR. MACCHIAROLI:  He's got nine criminal history

16   points.  I believe they're category four.

17             THE COURT:  Four.  And so you're at, you want me

18   to vary up to 40, 135 to 168?

19             MR. MACCHIAROLI:  Yes.

20             THE COURT:  And right now it's at a, well,

21   essentially a 20.  Twenty, criminal history category four.

22   Twenty is 51 to 36, so then 60 would fall within that zone.

23             MR. MACCHIAROLI:  And I note this for the Court

24   this is very hard to explain, but two years ago he's a

25   career offender.  Two years ago he's an armed criminal

1   offender in Maryland because the guns in Maryland, but his

2   guidelines are through the roof two years ago.  No

3   questions, no explanations.  That's the minimum of his

4   guidelines would be the career offender guidelines.

5        And here we are that because he pled guilty in

6   Superior Court to attempt which having practiced in Superior

7   Court is part of a plea bargain.

8        THE COURT:  I was going to say let me ask you a

9   question about that since the court has had to say the least

10  limited experience with the prosecutorial discretionary

11  decision-making process in the Superior Court.

12       My recollection here is that he stabbed a person

13  repeatedly with a sharp object was the description that he

14  pled guilty to.  Right?  Wouldn't that qualify for a more

15  serious assault than a misdemeanor assault under DC Code

16  law?  I don't have it in front of me, DC Code law in front

17  of me.  But common sense would tell me that that could carry

18  a more serious assault charge than a DC Code, under DC code.

19       MR. MACCHIAROLI:  Your Honor, absolutely.  But I

20  will tell you this you can also common sense probably tell

21  you and we can probably agree that victims in jail may not

22  be the most cooperating witness.

23       THE COURT:  True.  It wasn't captured on film?

24       MR. MACCHIAROLI:  My recollection it was

25  partially.  There is a number of issues.  I'm not faulting

1    the prosecutor for resolving it the way --

2              THE COURT:  You weren't the prosecutor in that

3    case?

4              MR. MACCHIAROLI:  I wasn't the prosecutor.  I was

5    aware of it.  I'm not faulting anybody.  Also which was

6    important to the government is to get Mr. Harrison's

7    acceptance of responsibility as to those facts.

8    Specifically knowing that I was going to argue those facts

9    to this Court because he was in jail in this Court's case

10   when he committed that offense.  So to have that case

11   resolved knowing that I could argue to you from book ends

12   from being before an adult his conduct to while he's waiting

13   for the trial in this case to show you the history and

14   characteristics of Mr. Harrison, to argue to the Court why

15   an upward variance is not only warranted, I think is

16   demanded in this case.

17             THE COURT:  Thank you, Mr. Macchiaroli.  Let me

18   hear from defense counsel.

19             MR. BECKER:  Before I start, judge, I'd like to

20   call your attention to a D.C. Circuit opinion from last

21   July, *United States versus Marquete Murray*, 897 F3d. 298.

22   In that case the facts were, the history is very similar.

23   Defendant before he entered his guilty plea had two Superior

24   Court charges pending.  And he then -- the plea agreement in

25   that case was very similar to the one in this case saying

1    that your criminal history is this based on all that we know

2    now.  It may become something else if we learn about

3    something later.

4            Defendant then pled guilty in the federal case.

5    The government then went to plea in the Superior Court

6    cases.  And then the probation office counted those

7    convictions in Superior Court as part of his criminal

8    history.  And the Court said, the D.C. Circuit said that was

9    a breach of the plea agreement.  Because the plea agreement

10   clearly said if we know, your criminal history is what we

11   know about now.  They knew about the two charges pending in

12   Superior Court.  And so the Court said now they found there

13   was no plain error because it wasn't raised until appeal.

14   But it did determine that the U.S. Attorney's office

15   breached the plea agreement.

16           THE COURT:  Are you suggesting that's what

17   happened here?

18           MR. BECKER:  I'm saying that the government knew

19   the events that led up to the charges in Superior Court

20   happened last April, a year ago.  Then this case got to plea

21   in August.  The government knew at that time about those

22   charges.  They were pending, and did not include it in the

23   estimated criminal history.  And subsequently --

24           THE COURT:  You weren't defense counsel?

25           MR. BECKER:  I was not defense counsel.

1          THE COURT:  Who was defense counsel?  I'm trying

2    to remember.

3          MR. BECKER:  Mark Carroll.

4          THE COURT:  Mark Carroll.  He was defense counsel.

5    He knew all about it.  He knew that that was pending in the

6    Superior Court.

7          MR. BECKER:  And in fact that was raised, that was

8    an issue in the *Murray* case as well.  And the court remand,

9    D.C. Circuit remanded for a hearing on ineffectiveness.  But

10   the court did say quite clearly that it was a breach of the

11   plea agreement at that point to count something they already

12   knew about, and then they brought the other case to the

13   plea.  And so now then it became part of the criminal

14   history.

15         THE COURT:  I'm looking at the -- hold on a

16   second, PSR here, and PSR which you've seen I believe, you

17   certainly should have seen.

18         MR. BECKER:  I have.

19         THE COURT:  No reason why you wouldn't have seen

20   it.  Has a description on Paragraph 50 of the charge in

21   question in the Superior Court, the assault charge, that he

22   pled guilty to.  And the calculation, guideline calculation

23   --

24         MR. BECKER:  The PSR does not include that charge

25   in the criminal history calculation.

1            THE COURT:  Right.  So, okay so the defendant

2    didn't get harmed in any way in that respect.  The court's

3    not -- I mean the government is not challenging the

4    calculation by the probation office.  All he's saying is

5    there should be an upward variance which he's free to argue

6    under the terms of the plea agreement, right?

7            MR. BECKER:  I -- he is free to argue that there

8    should be an upward variance to use a charge which is in

9    Superior Court that they knew about and did not include in

10   the criminal history calculation I think is pushing it

11   pretty far.

12           THE COURT:  I don't think *Murray*, I don't think

13   *Murray* goes as far as you're suggesting in that respect.

14           MR. BECKER:  Murray was, it was used in the

15   calculation of the criminal history category.  And then the

16   government asked for a range that exceeded what the range

17   would have been.

18           THE COURT:  That's a pretty significant difference

19   between *Murray* and this case.  All Mr. Macchiaroli is doing

20   is, and as he said himself, he made this clear to your prior

21   counsel, prior counsel in this case.  We're going to argue,

22   we're free to argue for variance.  We're going to argue for

23   variance.  And one of the basis for his request for variance

24   one, not the only one.  One, is the assault which he pled

25   guilty to.  And he's not arguing judge, the calculation by

1    the probation office is erroneous.  He's not arguing that.

2    He's arguing for a variance.

3              MR. BECKER:  Actually D.C. Circuit suggested they

4    should have delayed the plea in the Superior Court case.

5              THE COURT:  I'll go back and read *Murray*.  I'm

6    glad we have some time now because I'm going to reset the

7    scheduling of this until after the sentencing in the case in

8    the Superior Court.  So I have time to review *Murray* and see

9    if your argument has any weight based on the *Murray* opinion.

10   Because I'll be the first to admit to you off the top of my

11   head, I think you're stretching *Murray* a little far.

12             Now you're entitled to make your best argument.  I

13   understand that.  But this is only one of the factors that

14   Mr. Macchiaroli is advocating for this court for a variance.

15   Just one, so one factor.  He's asking for it based on a lot

16   of other things.

17             MR. BECKER:  I understand that, and I will get to

18   that.

19             THE COURT:  Okay.  Good.

20             MR. BECKER:  First of all, I think the government

21   entered in to this plea knowing what it was entering in to

22   and for it to now make the argument that well, that wasn't

23   adequate and we can't get the sentence we want because of

24   that because having entered in to that agreement it now

25   wants to more than double Mr. Harrison's sentence.

1          THE COURT:  You have the plea agreement in front

2     of you?  I don't have my copy in front of me.  But we can

3     get it, of course, if we need to.  Mr. Macchiaroli might

4     have a copy of the plea agreement.  My recollection of the

5     plea agreement, and this is all on recollection, is that

6     there's a specific paragraph that talks about allocution.

7     And it specifically provides in it that there be no

8     restriction on the government in elocuting for a sentence

9     that includes a variance upward.  That's just my

10    recollection now.

11         MR. BECKER:  Actually it said that and there was

12    also a paragraph that said they were asking for a departure

13    upward, and which contradicts the previous paragraph that

14    said they would not neither side would ask for a departure

15    in either direction.

16         THE COURT:  Well, I'll take a look at that.

17         MR. BECKER:  The plea agreement is contradictory

18    in itself.  And Mr. Macchiaroli has sort of framed his

19    arguments largely in reference to upward departures citing

20    guideline provisions.

21         THE COURT:  He hasn't asked the court for a

22    guideline departure.  He's asked for a variance.

23         MR. BECKER:  In my reading of his memo is that he

24    has asked for a departure.  He's asked for it both ways

25    really.

1           THE COURT:  I just heard him argue to the court

2    for about ten minutes or 15 minutes, and we talked about

3    variance, variance, variance.  He didn't say a word about

4    guideline departure.  He didn't say a word about it.

5           MR. BECKER:  But his pleadings are not the same,

6    so I want to be clear on the record.

7           THE COURT:  I think in the final analysis the

8    Court of Appeals is most interested and concerned about what

9    the judge's impression of what the basis for the argument

10   is.  And in my opinion it's the oral arguments more so even

11   than what's in writing.  I'll go back and look at the

12   writing.  I haven't tried to compare it jot and tittle with

13   his argument today.  His argument today was one hundred

14   percent about upward variance, a hundred percent.

15          MR. BECKER:  Okay.  I think --

16          THE COURT:  And what would be the basis for a

17   departure of guideline basis anyway?

18          MR. BECKER:  Well, that's the question I had which

19   is the guideline 2(k)2.4 Sub(b), says you can't use Chapter

20   III or IV.  And the probation office has said it cannot find

21   anything, and Mr. Macchiaroli hasn't cited anything, from

22   Chapter 5(h) or (k) that would be a departure.  And, but the

23   probation office also said that it didn't find any grounds

24   for a variance, so that's where we stand.

25          But Mr. Macchiaroli clearly has framed his

1    arguments as being covered by Chapter four.

2            THE COURT:  Are you suggesting to me that you have

3    seen the probation department's recommendation to the Court?

4    That's confidential.

5            MR. BECKER:  I have seen what is in the

6    presentence report, which states that they could find no

7    basis for an upward departure or an upward variance under

8    3355(a).

9            THE COURT:  I have to go back and look at that.  I

10   don't remember that.

11           MR. BECKER:  Okay.  Let's move on to --

12           THE COURT:  I want probation to check that out

13   because that's confidential.  The recommendation of

14   probation to the court is confidential at least in this

15   court.  I do not give out the recommendation of probation.

16           MR. BECKER:  But I believe the government is also

17   asking you to disregard what the D.C. Circuit has said.  Mr.

18   Harrison --

19           THE COURT:  In *Murray*?

20           MR. BECKER:  No *Winstead*.

21           THE COURT:  In *Winstead*, okay.  Go ahead.

22           MR. BECKER:  That Mr. Harrison's prior convictions

23   for attempt distribution cannot be counted toward a career

24   offender status.  But the government is asking you basically

25   to treat him as an armed career offender.  And so that's a

1   major problem I think in this whole situation.  If, even if

2   mister --

3          THE COURT:  If he was an armed career defendant,

4   right, wouldn't that be a minimum of 15 years?

5          MR. BECKER:  It would be a mandatory minimum of 15

6   years.

7          THE COURT:  They're not asking for 15 years.

8   They're not asking the Court to rule he's an armed career

9   offender.

10         MR. BECKER:  He quite clearly has asked you to

11  treat him as though he were without asking for the 15 year

12  sentence.

13         THE COURT:  What I heard Mr. Macchiaroli say was

14  when asked the question, "How did you come up with the

15  number 11 years," he tried to explain to the court to the

16  best of his ability the balancing he did as to, you know,

17  increasing the sentence in a direction, in the direction of

18  armed career, but not equal to an armed career offender.

19  And that's all.  He was using this yardstick I guess in

20  essence to do a comparative evaluation of what might be a

21  fair sentence in this case.

22         MR. BECKER:  Let me offer a different comparative

23  analysis.  If Mr. Harrison pled straight up to the

24  indictment in this case his offense level would have been

25  calculated under the guidelines at offense level 12 minus

1    two points, two levels for acceptance of responsibility.

2                THE COURT:  What would he have been pleading to

3    there?

4                MR. BECKER:  He would have been pleading to Count

5    one, conspiracy to distribute detectable amounts of cocaine

6    and crack.

7                THE COURT:  That was the only charge against him?

8                MR. BECKER:  That and the 924(c).

9                THE COURT:  You just said a second ago if he pled

10   straight up he would have pled to two offenses.

11               MR. BECKER:  Well, he wouldn't have pled to two

12   offenses.

13               THE COURT:  924(c).

14               MR. BECKER:  And conspiracy to distribute a

15   detectable amount of cocaine base and cocaine.

16               THE COURT:  If that were the case then how could

17   the guideline range be that different from the one --

18               MR. BECKER:  The guideline range under those

19   circumstances, the offense level for detectable amount of

20   cocaine or crack is 12, minus two levels for acceptance of

21   responsibility.  That gets him to a ten plus the 60 months

22   for the 924(c), which has to be consecutive.  So at criminal

23   history category four, offense level ten, his guidelines

24   range for Count one would be 15 to 21 months.  So in effect

25   his sentence under the guidelines would be 75 to 81 months.

```
 1              THE COURT:  How do you come up with number?

 2              MR. BECKER:  Well, if you were to calculate --

 3     it's very interesting, but in the original presentence

 4     report there's a Paragraph 106, that discusses a

 5     hypothetical sentence based on the plea to Count one.  And

 6     in the version I received after I took over this case it

 7     used as a quantity 5.6 to 11.2 grams of crack and said that

 8     would be offense level 18, but there is nothing in this case

 9     that supports the 5.6 to 11.2 grams.  The indictment charges

10     detectable amounts.

11              THE COURT:  But you're now talking hypotheticals.

12     Your sentencing memorandum does not dispute or disagree with

13     probation's calculation of the guideline range in this case.

14     You agree that it's 60 months, the guideline range.

15              MR. BECKER:  That's correct.

16              THE COURT:  You don't disagree.  The only issue

17     that's on the table for this Court is whether or not a

18     variance is appropriate in this particular case based on the

19     facts and the 3353 factors.  And that's why I'm trying to

20     get some clarity from you as to why you believe a variance

21     is inappropriate in this case.

22              Now Mr. Macchiaroli made it very clear by making

23     some comparisons as to a sentence, sentencing situation

24     where a person had no criminal history, none.  Same

25     circumstances as this, and would be getting the same
```

1    sentence as a person with the criminal history that your

2    client has which is very different, and the conduct your

3    client has engaged in which is very different.  He made

4    those comparisons.  Is there something you thought that was

5    impermissible or wrongful about those comparisons to compare

6    your client to someone who had no criminal history at all?

7           MR. BECKER:  His opinion are his opinions.  What

8    I'm trying to tell you is I believe that there are good

9    reasons not to vary, but even if you're going to vary it

10   should not be anywhere near 11 years.

11          THE COURT:  That's what I want to hear.  What the

12   good reasons not to vary is.  If your client right now is

13   facing a mandatory minimum of five years.  Okay.

14   Mr. Macchiaroli is in essence asking for a six year

15   enhancement to put it in simple terms.  Okay.  He stated

16   reasons why he thinks an enhancement is not only

17   appropriate, but warranted under the circumstances of this

18   case, looking at the criminal history of your client, and

19   his conduct in this case.

20          And by which I mean the extent of his involvement

21   in this crack cocaine operation.  The number of weapons he

22   had when he was arrested in his possession at the time, and

23   then his conduct post arrest where he was involved in a very

24   serious assault on another inmate.  Those are the things he

25   is pointing to as reasons for why a variance upward from

1    five years to 11 years is appropriate in this case, is

2    warranted in this case.  And conversely why a sentence of 60

3    months in this case would be grossly unjust under the

4    circumstances.

5          It would be the kind of sentence that a person

6    with no criminal history who had only one gun, the minimum

7    gun, who had limited involvement with the distribution of

8    the drugs, and who did not engage in a vicious attack on a

9    fellow inmate after his arrest would be getting.  And he was

10   trying to help the court understand why he believes an

11   variance upward is appropriate.

12         Frankly, this looks to me like a case have a far

13   advance is appropriate the only question is how much.  How

14   much?  Not whether.  And I want to give you a full chance to

15   argue for why six is excessive and an amount less than six

16   is appropriate.  If you want to argue to me that 60 months

17   is appropriate in this case, I'm telling you you can argue

18   it, but I'm telling you in fairness to you you're wasting

19   your time.

20         MR. BECKER:  And judge that's where I was going

21   when I said to you I tried to discuss the hypothetical that

22   the probation office presented to you.  Okay.  The

23   hypothetical is what would have happened in this case if Mr.

24   Harrison had been convicted with his criminal history.  What

25   the guideline range would be with his criminal history for

```
 1   his role in the conspiracy as well as the guns.  Because the

 2   guns don't take into account his role in the conspiracy.

 3          It's a fixed 60-month sentence.  Okay.  The

 4   government did not have Mr. Harrison selling drugs or even

 5   holding cocaine or crack.  He had none when he was arrested.

 6   They charged him with only having detectable amounts.

 7          They --

 8          THE COURT:  How about the equipment that can be

 9   used to convert powder to crack?

10          MR. BECKER:  And it may conceivable -- I don't

11   know where the detectable amounts came from.  It may have

12   been on the equipment, I just don't know.  But there's no

13   evidence in this case that I have found in the discovery of

14   Mr. Harrison actually distributing drugs.  He never

15   possessed the guns as we can tell outside his resident.

16          If, I question whether Mr. Macchiaroli believes

17   all those guns are his.  I don't.  But often in drug

18   conspiracy cases I have seen where one defendant gets left

19   literally holding the bag.  Okay.  And based on the evidence

20   in this case I think it is fair to assume with regard to the

21   guns that Mr. Harrison had a bunch of guns that belonged to

22   other people and he refused to debrief.

23          Okay.  So we don't know and Mr. Macchiaroli

24   doesn't know whose guns those were.  But the point is in

25   terms of this conspiracy, the way the government charged Mr.
```

1    Harrison even if he were, had pled straight up to the

2    indictment.  In other words, the conspiracy as well as the

3    guns, under the guidelines, the advisory guideline range at

4    criminal history category four would be 75 to 81 months.

5    Okay.  So that's just over six years and under seven.

6              So as a guideline for how far, where you should

7    come down I think, I hope that that's somewhat helpful.

8              I would also like to point out that Mr. Jenkins

9    has pleaded guilty, but he hasn't been sentenced yet.

10   Mr. Jenkins's guideline range based on the plea agreement is

11   somewhere in the neighborhood of 71 to 85 months, I believe

12   with criminal history category zero.  Even if his criminal

13   history category were the same as Mr. Harrison his guideline

14   range would be a 100 to 125 months, and he was a major

15   player in the conspiracy.

16             THE COURT:  You just said a second ago he hasn't

17   been sentenced yet.

18             MR. BECKER:  I believe -- I'm talking, what I'm

19   saying to you with reference to the guidelines the

20   agreement, the plea agreement says that the parties agree on

21   a range to 71 to 85 months.  And that's again a criminal

22   history category one.  But even if he were at category four

23   that by his guideline range would be less than what the

24   government is asking for on behalf of Mr. Harrison.  And

25   yes, Jenkins had a gun, in addition to drugs, and in

1   addition to large quantities of cash and was a major player

2   in the conspiracy.

3           So in terms of sentencing I think those things

4   argue for a sentence of well below the 11 years.  And you

5   know when the probation office originally came out with the

6   presentence report I highlighted this issue about what

7   quantity of drugs they were using to calculate that

8   hypothetical sentence and they took it out.  They didn't

9   calculate a guideline sentence under that provision anymore.

10  So I'm not sure where that 5.6 to 11.2 grams came from but

11  it doesn't come out of this case.

12          THE COURT:  Presentence report, at least the one

13  that I'm looking at, was written, was prepared in

14  October 2018, revised in November and in April 24th, 2019.

15  And I don't what the revisions were.  I can't tell from

16  looking at this.

17          MR. BECKER:  The key paragraph is paragraph 106.

18          THE COURT:  I understand that, but like I said at

19  the beginning of this conversation that's a, not binding on

20  this Court; b, the guideline range that the probation office

21  bottom line is 60 months; c, you're not quarreling with that

22  60 month calculation.  Never have.

23          MR. BECKER:  I can't, the statute says it's 60

24  months.

25          THE COURT:  Okay, 60 months.  And the only issue

1   before the Court is whether a variance upward is warranted

2   under the facts in this case and if so, how much.  Those are

3   the only two questions.  If you want to supplement your

4   sentencing memorandum you're welcome to do so, and Mr.

5   Macchiaroli is welcome to supplement his.  Because there

6   won't be any sentencing in this case until after the

7   sentencing takes places in the Superior Court.

8           MR. BECKER:  And my answer on that is as to what

9   the variance should be is if you're going to vary upward the

10  variance should be in the range of 15 to 21 months.

11          THE COURT:  Okay.  And how do you -- I'll ask you

12  the same question I asked Mr. Macchiaroli.  How do you come

13  up with those numbers?

14          MR. BECKER:  I just explained to you that is what

15  would have happened if he had pled to the conspiracy as well

16  as the guns.  And so that as a guideline for where you

17  should come down if you are going to vary upward, and I'm

18  arguing that you should not vary upward.

19          THE COURT:  Right.  I understand that.

20          MR. BECKER:  But if you are going to vary upward

21  you have a frame of reference based on the guideline

22  calculation in this case without going off in to what would

23  have happened in Maryland or anything else like that.

24          But I think in addition to that -- Court's

25  indulgence for just one moment.

1          [Brief pause.]

2          MR. BECKER:  By the way, because I think I need to

3    make the record I will say that I believe the government has

4    breached the plea agreement in another way in this case.

5          THE COURT:  Okay.

6          MR. BECKER:  Which is I think it's fairly clear

7    from what has transpired and the way the presentence report

8    progressed that after agreeing that the parties would not

9    try to influence the offense level calculation the

10   government has in its approach to the, to the probation

11   office if not the court, and if there is any saving grace to

12   that, in large respect goes to that hypothetical sentence

13   not the guideline range.

14         THE COURT:  You know that old saying, "Be careful

15   what you hope for, you might get it."

16         MR. BECKER:  I actually was going to say that.

17         THE COURT:  Be very careful.  Because if you were

18   to convince the Court that they had breached the plea

19   agreement there would be consequences potentially to your

20   client that would be much worse than the sentencing that

21   he's facing at this time of this court under these

22   circumstances, including the possibility of him being

23   prosecuted in Maryland as an armed career criminal, which

24   would carry a mandatory minimum of 15 years and possibly a

25   sentence worse than that.

1          So be careful.  Think that through, and talk your

2     client through on that, you know.  You're welcome to file

3     your motion if you want to file one.  You're welcome to

4     supplement your sentencing memorandum if you want to, but

5     just be careful.

6          MR. BECKER:  Okay.  I was going to say the same

7     thing not so much to you but with regard to Mr. Macchiaroli

8     which is this plea agreement includes an appeal waiver.  The

9     appeal waiver says that unless you sentence him illegally,

10    in other words, in excess of the statutory maximum or above

11    the guideline range as calculated by you, then he has a

12    right of appeal.  The appeal waiver is in effect.  And the

13    guideline sentence is what it is in this case.  It's not

14    like other cases where an application of enhancements or

15    reductions is based on chapter four, chapter three.

16          THE COURT:  If the court were to vary upwards it

17    would be an appealable issue.

18          MR. BECKER:  It would be an appealable issue.

19          THE COURT:  I'm very aware of that as well as

20    Mr. Macchiaroli.

21          MR. BECKER:  And, you know, without saying this

22    just as a factual matter the greater the variance upward the

23    more likely an appeal is.  So it's --

24          THE COURT:  I frankly would assume if there was

25    anything I guess it would be an appeal.  In my experience

1    whenever I have varied, and I probably have varied upward as

2    much or more than any of my colleagues.  I've done lots of

3    appeals.  I've won some, I've lost some.  But the bottom

4    line in every case from my prospective was I did what I

5    thought was right.

6            And in this case I'm going to figure out to the

7    best of my ability what the right sentence is.  And I'm

8    going to wait and see what happens in the Superior Court,

9    and I'm also going to give you a chance to supplement your

10   sentencing memo.  And if Mr. Macchiaroli wants to supplement

11   his he can do that too.  I don't care.

12           I wanted to have the benefit of today's argument

13   to be helpful to me in thinking through and preparing for

14   when we actually have the sentencing argument in this case

15   which would probably be in July.  Because the sentencing is

16   June 21 in Superior Court.  I haven't set a date.  I want to

17   wait and see what happens there.  It will probably be in

18   July assuming it takes place June 21.

19           MR. BECKER:  Okay.

20           THE COURT:  All right.  Thank you, sir.

21   Mr. Macchiaroli, if you want to respond briefly.

22           MR. MACCHIAROLI:  Very briefly, your Honor.  With

23   all due respect I don't know how to say this more politely,

24   but I don't know what Mr. Becker is talking about.  I don't

25   know what he's talking about.

1            The guideline range is 60 months.  It doesn't

2     matter what other calculation.  The benefit of the 924(c),

3     and U.S. probation will agree, they don't have to calculate

4     the convictions.

5            THE COURT:  It doesn't matter what the

6     hypotheticals may have been in the PSR it doesn't matter.

7            MR. MACCHIAROLI:  None of that matters.  So it

8     doesn't matter if we were aware there was a pending homicide

9     trial and they haven't reached a verdict yet, and his

10    criminal history doesn't, it's still 60 months.  I don't

11    know what Mr. Becker is talking about.

12           THE COURT:  And it's advisory.

13           MR. MACCHIAROLI:  Plus I believe it's two or three

14    months after Mr. Harrison's plea in this case that he

15    pleaded in Superior Court.  That case was pending.  Why on

16    earth would the government list something in a criminal

17    history when there's a pending case?  It could have been

18    dismissed.  It could have been an acquittal.  We have no

19    idea, no idea whatsoever.

20           As to pleading to the indictment, I would have

21    loved that.  I would have asked for life for the 924(c),

22    consecutive to what we would have had and what we normally

23    would have a relevant conduct hearing where Agent Rowe and

24    Agent Macovina would come up and testify with exhibits what

25    Mr. Harrison's relevant conduct, narcotics conduct is with

1    either wire calls or surveillance or other people's factual

2    proffers or debriefs or anything like that.

3              THE COURT:  With a preponderance standard.

4              MR. MACCHIAROLI:  With a preponderance standard.

5    Mr. Becker is talking about detectable amounts.  Somebody

6    was just convicted by myself and with my colleague before

7    Judge Mehta of a detectable amount about six weeks ago.

8    U.S. probation calculates the relevant conduct I think at

9    544 grams.  It doesn't matter what the detect -- that

10   doesn't mean zero.  It means what the government proves

11   either by plea proffer or by a hearing where obviously Mr.

12   Becker could cross-examine.

13             This concept of a breach of a plea agreement I

14   don't where that's coming from.  I hope Mr. Becker gets a

15   copy of the transcript, files something with the Court and

16   just says judge, I withdraw these arguments for the interest

17   of my client.

18             THE COURT:  What about this *Murray* analysis, see

19   anything there?

20             MR. MACCHIAROLI:  Judge, *Murray* is when you

21   actually, there's a criminal history calculation --

22             THE COURT:  It doesn't occur here.

23             MR. MACCHIAROLI:  It doesn't occur here.

24   Moreover, that wasn't even resolved over there, and it's

25   very clear there's no global plea offer.  It's not an issue.

1    And, in fact, we're asking what would this Court do to the

2    government if I got up at sentencing, asked for a sentence

3    that didn't even mention oh by the way, the guy stabbed

4    somebody at the DC jail while pending sentencing.  This

5    court would have asked, are you even aware what the

6    defendant in your own case does, what an appropriate

7    sentence would be?  Of course, I was going to argue that as

8    part of the statutory factors.  Makes no difference.

9         How many cases do we have, pending cases in

10   Maryland or Superior Court?  Irrelevant.  Especially when

11   there's no criminal history calculation.  Makes no

12   difference it's 60 months.  It goes ultimately to the point

13   of the first offender committing a 924(c) having 60 months

14   the same as Mr. Harrison.  Completely irrelevant.

15        And as to this new theory that Mr. Harrison's the

16   poor guy holding the bag of guns, I must be in the twilight

17   zone.  I'm reading from paragraph 31 of the PSR which is

18   copied from Mr. Harrison's plea proffer.  No objection, no

19   statement by Mr. Becker that's a false statement.  He never

20   said that.  This is Mr. Harrison admitting that he possessed

21   the aforementioned firearms in furtherance of the drug

22   trafficking activities in which he was involved.

23        He stated the firearms protected him and his

24   residence from being robbed by customers and other drug

25   dealers when he was in possession and distributing

1    narcotics.  Did he say I'm just holding them for someone to

2    pick them up?  No.  These were his firearms.  And there

3    wasn't some box where they were all kept right waiting for

4    the agents to execute the search warrant.  Some were found

5    with dust, and you can see that in the photos.

6            With all due respect I don't understand

7    Mr. Becker's arguments.  I think the issue as the court

8    framed it is what the whole sentencing is about.  What is

9    appropriate sentence for Mr. Harrison based on the factors?

10   Is there a basis to vary upward because you can't vary

11   downward with a mandatory minimum.  And why?  These

12   arguments out there, I mean I don't know where they're

13   coming from.  It doesn't help that analysis in any way.

14           THE COURT:  All right.  Both sides can have --

15   after you get the transcript because it might take a while

16   to get the transcript, I want you to have a chance to review

17   the transcript of today's arguments.  And from the date you

18   receive the transcript, I don't know what date that will be

19   but in the next few weeks hopefully.  You can have two weeks

20   from that to supplement your sentencing memorandum if you

21   wished.  You don't have to.  You're not required to.  It's

22   just if you want to.  After reviewing the transcript you'll

23   be in a position to know whether you needed to say something

24   else or change something you said or whatever.

25           So you'll have two weeks to do that.  Just submit

1    it.  We're not going to do rounds, like you go first, you go

2    second.  It's two weeks.  It will be from the date that you

3    receive the transcript of today's hearing.  Okay.  I'll set

4    the date for the sentencing after the sentencing hearing

5    takes place over in the Superior Court.  I've told probation

6    to bring it to my attention what happened, to track it and

7    bring to the court's attention what happened over in the

8    Superior Court, and give me some information as to whether

9    its actually occurred, that it's done.  It's over.

10           And then I'll set the date, but like I just said a

11   minute ago it will probably be in July because I don't want

12   to extent this out too further.  This has been going on for

13   a while, so plan on it.  Hopefully if it happens on

14   June 21st, this sentencing will happen in July.

15           All right.  You don't need to submit anything

16   further.  You can submit everything you have plus some

17   supplements if you wish to do that.  Anything further

18   questions from the government?

19           MR. MACCHIAROLI:  No, your Honor.

20           THE COURT:  Anything further questions from the

21   defense?

22           MR. BECKER:  No, your Honor.

23           THE COURT:  Stand in recess.

24           [Thereupon, the proceedings adjourned at 4:12

25           p.m.]

1                        **CERTIFICATE**

2            I, Cathryn J. Jones, an Official Court Reporter

3    for the United States District Court of the District of

4    Columbia, do hereby certify that I reported, by machine

5    shorthand, the proceedings had and testimony adduced in the

6    above case.

7            I further certify that the foregoing 35 pages

8    constitute the official transcript of said proceedings as

9    transcribed from my machine shorthand notes.

10           In witness whereof, I have hereto subscribed my

11   name, this the 28th day of May, 2019.

12

13                              /s/_Cathryn J. Jones
14                              Cathryn J. Jones, RPR
                                Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25

MR. BECKER: [51]
MR. MACCHIAROLI: [21]  2/8 3/13 4/1
4/7 4/19 5/25 6/20 8/17 9/14 9/18 9/22
10/18 10/23 11/3 30/21 31/6 31/12
32/3 32/19 32/22 35/18
THE COURT: [71]
THE DEPUTY CLERK: [1]  2/1

.

.x [1]  1/6

/

/s [1]  36/13

1

100 [1]  25/14
106 [2]  21/4 26/17
11 [10]  5/16 7/10 8/16 8/24 9/5 9/11
19/15 22/10 23/1 26/4
11.2 grams [3]  21/7 21/9 26/10
12 [2]  19/25 20/20
125 [1]  25/14
135 [1]  9/18
14 [1]  7/12
15 [9]  9/1 17/2 19/4 19/5 19/7 19/11
20/24 27/10 28/24
155 [1]  1/16
168 [1]  9/18
18 [1]  21/8
18-59-8 [1]  2/3
18-59-8-RJL [1]  1/4

2

2.4 [1]  17/19
20 [1]  9/21
20001 [1]  1/21
20015 [1]  1/17
2018 [1]  26/14
2019 [3]  1/5 26/14 36/11
20530 [1]  1/14
21 [4]  20/24 27/10 30/16 30/18
21st [1]  35/14
24 [1]  6/6
24th [1]  26/14
28th [1]  36/11
298 [1]  11/21

3

31 [1]  33/17
333 [1]  1/20
3353 [1]  21/19
3355 [1]  18/8
35 [1]  36/7
36 [1]  9/22

4

40 [1]  9/18
4:12 [1]  35/24

5

5.6 [3]  21/7 21/9 26/10
50 [1]  13/20
51 [1]  9/22
544 grams [1]  32/9
555 [1]  1/13
5614 [1]  7/7

6

60 [16]  5/8 7/7 7/21 9/22 20/21 21/14
23/2 23/16 26/21 26/22 26/23 26/25
31/1 31/10 33/12 33/13
60-month [1]  24/3
6521 [1]  1/20

7

71 [2]  25/11 25/21
75 [2]  20/25 25/4

8

81 [2]  20/25 25/4
85 [2]  25/11 25/21
897 [1]  11/21

9

924 [12]  5/7 5/23 6/3 6/7 8/24 9/2 20/8
20/13 20/22 31/2 31/21 33/13

A

ability [2]  19/16 30/7
about [36]  3/7 3/10 5/9 5/10 5/17 7/18
8/5 8/12 8/18 8/19 8/21 10/9 12/2
12/11 12/11 12/14 13/5 13/12 14/9
16/6 17/2 17/2 17/3 17/4 17/8 17/14
22/5 24/8 26/6 30/24 30/25 31/11 32/5
32/7 32/18 34/8
above [3]  5/14 29/10 36/6
absolutely [2]  5/19 10/19
acceptance [3]  11/7 20/1 20/20
account [1]  24/2
acquittal [1]  31/18
activities [1]  33/22
actual [1]  5/21
actually [8]  6/18 15/3 16/11 24/14
28/16 30/14 32/21 35/9
addition [3]  25/25 26/1 27/24
adduced [1]  36/5
adequate [1]  15/23
adjourned [1]  35/24
admit [1]  15/10
admitting [1]  33/20
adult [2]  6/25 11/12
advance [1]  23/13
advisory [2]  25/3 31/12
advocacy [1]  7/11
advocating [1]  15/14
aforementioned [1]  33/21
after [10]  3/4 15/7 21/6 23/9 27/6 28/8
31/14 34/15 34/22 35/4
afternoon [4]  2/2 2/3 2/9 2/16
again [4]  4/21 7/2 25/21
against [1]  20/7
Agent [2]  31/23 31/24
agents [2]  2/12 34/4
ago [8]  9/24 9/25 10/2 12/20 20/9
25/16 32/7 35/11
agree [4]  10/21 21/14 25/20 31/3
agreeing [1]  28/8
agreement [18]  11/24 12/9 12/9 12/15
13/11 14/6 15/24 16/1 16/4 16/5 16/17
25/10 25/20 25/20 28/4 28/19 29/8
32/13
ahead [1]  18/21
aided [1]  1/24
all [27]  4/11 4/13 4/24 5/9 6/5 7/6 7/25

8/6 8/7 8/8 8/14 9/6 12/1 13/5 14/4
14/18 15/20 16/5 19/19 22/6 24/21
30/20 30/23 34/3 34/6 34/14 35/15
allocution [1]  16/6
already [1]  13/11
also [7]  10/20 11/5 16/12 17/23 18/16
25/8 30/9
AMERICA [2]  1/3 2/4
amongst [1]  8/23
amount [4]  20/15 20/19 23/15 32/7
amounts [5]  20/5 21/10 24/6 24/11
32/5
analysis [4]  17/7 19/23 32/18 34/13
Andrew [1]  2/14
another [2]  22/24 28/4
answer [3]  3/10 8/20 27/8
any [9]  7/14 8/12 14/2 15/9 17/23 27/6
28/11 30/2 34/13
anybody [1]  11/5
anymore [1]  26/9
anything [9]  17/21 17/21 27/23 29/25
32/2 32/19 35/15 35/17 35/20
anyway [1]  17/17
anywhere [1]  22/10
apologize [1]  2/19
apparatus [2]  7/24 8/8
appeal [7]  12/13 29/8 29/9 29/12
29/12 29/22 29/23 29/25
appealable [2]  29/17 29/18
appeals [2]  17/8 30/3
APPEARANCES [1]  1/11
application [1]  29/14
applying [1]  9/4
approach [2]  2/7 28/10
appropriate [13]  3/11 5/20 8/24 9/5
21/18 22/17 23/1 23/11 23/13 23/16
23/17 33/6 34/9
April [2]  12/20 26/14
April 24th [1]  26/14
are [16]  2/11 5/16 6/12 10/2 10/5 12/16
17/5 18/2 22/7 22/8 22/24 24/17 27/2
27/17 27/20 33/5
argue [14]  11/8 11/11 11/14 14/5 14/7
14/21 14/22 14/22 17/1 23/15 23/16
23/17 26/4 33/7
arguing [5]  4/25 14/25 15/1 15/2 27/18
argument [9]  3/15 15/9 15/12 15/22
17/9 17/13 17/13 30/12 30/14
arguments [8]  3/8 16/19 17/10 18/1
32/16 34/7 34/12 34/17
armed [10]  6/19 9/1 9/10 9/25 18/25
19/3 19/8 19/18 19/18 28/23
arrest [2]  22/23 23/9
arrested [2]  22/22 24/5
arsenal [1]  6/5
articulate [1]  3/9
as [46]
ask [4]  7/7 10/8 16/14 27/11
asked [12]  7/8 14/16 16/21 16/22
16/24 16/24 19/10 19/14 27/12 31/21
33/2 33/5
asking [20]  4/11 4/22 5/1 5/14 5/15
5/16 7/9 8/12 8/15 8/19 15/15 16/12
18/17 18/24 19/7 19/8 19/11 22/14
25/24 33/1
assault [3]  3/18 10/15 10/15 10/18
13/21 14/24 22/24

**A**

assume [2] 24/20 29/24
assuming [2] 4/13 30/18
attack [1] 23/8
attempt [2] 10/6 18/23
attention [3] 11/20 35/6 35/7
ATTORNEY'S [3] 1/12 2/13 12/14
audio [1] 8/11
August [1] 12/21
AUSA [1] 1/12
authority [1] 2/23
Avenue [2] 1/16 1/20
aware [4] 11/5 29/19 31/8 33/5

**B**

back [4] 4/21 15/5 17/11 18/9
bag [2] 24/19 33/16
balance [2] 8/25 9/11
balancing [1] 19/16
bargain [1] 10/7
base [1] 20/15
based [11] 6/23 12/1 15/9 15/15 21/5
 21/18 24/19 25/10 27/21 29/15 34/9
basically [1] 18/24
basis [6] 14/23 17/9 17/16 17/17 18/7
 34/10
be [57]
became [1] 13/13
because [21] 3/23 4/22 5/17 10/1 10/5
 11/9 12/9 12/13 15/6 15/10 15/23
 15/24 18/13 24/1 27/5 28/2 28/17
 30/15 34/10 34/15 35/11
Becker [10] 1/15 1/16 2/17 7/11 30/24
 31/11 32/5 32/12 32/14 33/19
Becker's [1] 34/7
become [1] 12/2
been [18] 3/5 3/22 3/24 4/8 5/10 5/19
 14/17 19/24 20/2 20/4 23/24 24/12
 25/9 25/17 31/6 31/17 31/18 35/12
before [11] 1/9 2/21 3/15 6/25 8/1 8/2
 11/12 11/19 11/23 27/1 32/6
beginning [1] 26/19
behalf [2] 2/17 25/24
being [6] 3/19 6/22 11/12 18/1 28/22
 33/24
believe [10] 3/10 9/16 13/16 18/16
 21/20 22/8 25/11 25/18 28/3 31/13
believes [2] 23/10 24/16
belonged [1] 24/21
below [1] 26/4
benefit [2] 30/12 31/2
best [3] 15/12 19/16 30/7
between [6] 3/7 6/11 6/22 8/25 9/3
 14/19
binding [1] 26/19
book [1] 11/11
booked [1] 8/10
both [2] 16/24 34/14
bottom [2] 26/21 30/3
box [1] 34/3
boxes [1] 7/25
breach [2] 12/9 13/10 32/13
breached [3] 12/15 28/4 28/18
Brief [1] 28/1
briefly [2] 30/21 30/22
bring [2] 35/6 35/7
brought [2] 8/2 13/12

bunch [1] 24/21
Bureau [1] 2/1

**C**

calculate [4] 21/2 26/7 26/9 31/3
calculated [2] 19/25 29/11
calculates [1] 32/8
calculation [15] 8/21 13/22 13/22
 13/25 14/4 14/10 14/15 14/25 21/13
 26/22 27/22 28/9 31/2 32/21 33/11
calendar [2] 4/10 4/10
call [2] 5/5 11/20
calls [1] 32/1
came [3] 24/11 26/5 26/10
can [14] 2/22 4/19 7/7 10/20 10/21
 16/2 23/17 24/8 24/15 30/11 34/5
 34/14 34/19 35/16
can't [7] 4/17 8/13 15/23 17/19 26/15
 26/23 34/10
cannot [1] 17/20 18/23
captured [1] 10/23
care [1] 30/11
career [15] 6/15 6/17 6/18 6/19 9/1
 9/10 9/25 10/4 18/23 18/25 19/3 19/8
 19/18 19/18 28/23
careful [4] 28/14 28/17 29/1 29/5
Carroll [1] 13/3 13/4
carry [2] 10/17 28/24
case [65]
cases [5] 12/6 24/18 29/14 33/9 33/9
cash [1] 26/1
category [10] 9/14 9/16 9/21 14/15
 20/23 25/4 25/12 25/13 25/22 25/22
Cathryn [4] 1/19 36/2 36/13 36/14
cell [1] 8/10
certainly [1] 13/17
CERTIFICATE [1] 36/1
certify [2] 36/4 36/7
challenging [1] 14/3
chance [5] 3/9 3/12 23/14 30/9 34/16
change [1] 34/24
chapter [5] 17/19 17/22 18/1 29/15
 29/15
characteristics [3] 5/1 6/14 11/14
charge [7] 9/10 10/18 13/20 13/21
 13/24 14/8 20/7
charged [2] 24/6 24/25
charges [6] 4/13 11/24 12/11 12/19
 12/22 21/9
check [2] 7/25 18/12
Christine [1] 2/12
Christopher [3] 1/12 2/10 2/12
Circuit [7] 6/20 6/21 11/20 12/8 13/9
 15/3 18/17
Circuit's [1] 6/16
circumstances [8] 6/12 6/12 8/14
 20/19 21/25 22/17 23/4 28/22
cited [1] 17/21
citing [1] 16/19
clarity [1] 21/20
clear [5] 14/20 17/6 21/22 28/6 32/25
clearly [4] 12/10 13/10 17/25 19/10
client [8] 22/2 22/3 22/6 22/12 22/18
 28/20 29/2 32/17
cocaine [8] 7/23 7/23 20/5 20/15
 20/15 20/20 22/21 24/5
code [10] 10/15 10/16 10/18 10/18

codefendants [1] 8/11
colleague [1] 32/6
colleagues [2] 2/14 30/2
coloring [1] 7/3
COLUMBIA [3] 1/2 1/13 36/4
come [8] 7/12 19/14 21/1 25/7 26/11
 27/12 27/17 31/24
comes [2] 8/9
coming [2] 32/14 34/13
commit [1] 5/22
committed [2] 6/3 11/10
committee [1] 7/9
committing [3] 6/24 6/25 33/13
common [2] 10/17 10/20
comparative [2] 19/20 19/22
compare [2] 17/12 22/5
comparisons [5] 21/23 22/4 22/5
Completely [1] 33/14
compromise [1] 9/9
computer [1] 1/24
computer-aided [1] 1/24
conceivable [1] 24/10
concept [1] 32/13
concerned [3] 5/5 5/6 17/8
concerns [1] 5/17
concrete [1] 6/12
conduct [10] 6/23 8/5 11/12 22/2
 22/19 22/23 31/23 31/25 31/25 32/8
confidential [3] 18/4 18/13 18/14
connected [1] 9/2
Connecticut [1] 1/16
consecutive [6] 2/23 3/20 3/21 4/13
 20/22 31/22
consequences [1] 28/19
consideration [2] 7/6 9/12
conspiracy [11] 6/9 20/5 20/14 24/1
 24/2 24/18 24/25 25/2 25/15 26/2
 27/15
constitute [1] 36/8
Constitution [1] 1/20
context [1] 3/16
continue [2] 4/4 4/5
contradictory [1] 16/17
contradicts [1] 16/13
control [1] 4/17
conversation [1] 26/19
conversely [1] 23/2
convert [1] 24/9
convicted [2] 23/24 32/6
convictions [5] 5/18 5/22 12/7 18/22
 31/4
convince [1] 28/18
cook [1] 7/24
cooperating [1] 10/22
copied [1] 33/18
copy [3] 16/2 16/4 32/15
correct [1] 21/15
could [10] 4/18 4/21 8/4 10/17 11/11
 18/6 20/16 31/17 31/18 32/12
counsel [10] 2/7 2/19 4/20 11/18
 12/24 12/25 13/1 13/4 14/21 14/21
count [5] 5/7 13/11 20/4 20/24 21/5
counted [2] 12/6 18/23
country [1] 6/23
couple [1] 8/22
course [2] 16/3 33/7
court [73]

## C

**court's [5]** 5/17 11/9 14/2 27/24 35/7
**courthouse [1]** 8/23
**courtroom [1]** 2/5
**covered [1]** 18/1
**crack [9]** 6/6 7/23 7/24 20/6 20/20 21/7 22/21 24/5 24/9
**crimes [3]** 3/2 6/25 7/1
**criminal [36]** 2/3 5/9 5/22 6/2 6/2 6/14 8/15 9/13 9/15 9/21 9/25 12/1 12/7 12/10 12/23 13/13 13/25 14/10 14/15 20/22 21/24 22/1 22/6 22/18 23/6 23/24 23/25 25/4 25/12 25/12 25/21 28/23 31/10 31/16 32/21 33/11
**cross [1]** 32/12
**cross-examine [1]** 32/12
**customers [1]** 33/24

## D

**D.C [8]** 1/5 1/21 6/16 11/20 12/8 13/9 15/3 18/17
**date [6]** 30/16 34/17 34/18 35/2 35/4 35/10
**day [1]** 36/11
**DC [9]** 1/14 1/17 7/2 8/3 10/15 10/16 10/18 10/18 33/4
**dealers [1]** 33/25
**debrief [1]** 24/22
**debriefs [1]** 32/2
**decision [3]** 3/3 3/4 10/11
**decision-making [1]** 10/11
**deeper [1]** 6/13
**defendant [11]** 1/6 1/15 3/17 5/1 8/2 11/23 12/4 14/1 19/3 24/18 33/6
**defendant's [1]** 8/15
**defendants [1]** 8/23
**defense [12]** 3/12 4/2 4/2 4/4 4/4 4/20 11/18 12/24 12/25 13/1 13/4 35/21
**defense's [1]** 3/8
**definition [2]** 6/15 6/15
**DeFoe [1]** 2/14
**delayed [1]** 15/4
**demanded [1]** 11/16
**department's [1]** 18/3
**departure [8]** 16/12 16/14 16/22 16/24 17/4 17/17 17/22 18/7
**departures [1]** 16/19
**description [2]** 10/13 13/20
**detect [1]** 32/9
**detectable [8]** 20/5 20/15 20/19 21/10 24/6 24/11 32/5 32/7
**determine [1]** 12/14
**did [14]** 8/2 8/17 9/6 9/8 12/14 12/22 13/10 14/9 19/14 19/16 23/8 24/4 30/4 34/1
**didn't [6]** 14/2 17/3 17/4 17/23 26/8 33/3
**difference [4]** 5/11 14/18 33/8 33/12
**different [5]** 8/23 19/22 20/17 22/2 22/3
**dig [1]** 6/13
**direction [3]** 16/15 19/17 19/17
**disagree [2]** 21/12 21/16
**discovery [1]** 24/13
**discretionary [1]** 10/10
**discuss [1]** 23/21
**discusses [1]** 21/4

**dismissed [1]** 31/18
**disparities [1]** 6/22
**disparity [1]** 6/11
**dispute [1]** 21/12
**disregard [1]** 18/17
**distribute [2]** 20/5 20/14
**distributing [2]** 24/14 33/25
**distribution [2]** 18/23 23/7
**DISTRICT [7]** 1/1 1/2 1/10 1/13 1/20 36/3 36/3
**DNA [1]** 8/9
**do [13]** 18/15 19/20 21/1 27/4 27/11 27/12 30/11 33/1 33/9 34/25 35/1 35/17 36/4
**docket [2]** 1/4 4/3
**does [5]** 4/18 7/20 13/24 21/12 33/6
**doesn't [13]** 4/6 24/24 26/11 31/1 31/5 31/6 31/8 31/10 32/9 32/10 32/22 32/23 34/13
**doing [1]** 14/19
**don't [29]** 3/6 4/10 7/14 8/4 10/16 14/12 14/12 16/2 18/10 21/16 24/2 24/10 24/12 24/17 24/23 26/15 30/11 30/23 30/24 30/24 31/3 31/10 32/14 34/6 34/12 34/18 34/21 35/11 35/15
**done [4]** 6/24 7/11 30/2 35/9
**double [1]** 15/25
**down [2]** 25/7 27/17
**downward [1]** 34/11
**drug [6]** 7/22 8/8 9/3 24/17 33/21 33/24
**drugs [5]** 23/8 24/4 24/14 25/25 26/7
**drum [1]** 6/5
**due [2]** 30/23 34/6
**dust [1]** 34/5

## E

**earlier [1]** 2/20
**early [1]** 9/8
**earth [1]** 31/16
**EDDA [1]** 6/21
**effect [2]** 20/24 29/12
**either [3]** 16/15 32/1 32/11
**elocuting [1]** 16/8
**else [3]** 12/2 27/23 34/24
**ends [1]** 11/11
**engage [1]** 23/8
**engaged [1]** 22/3
**enhancement [2]** 22/15 22/16
**enhancements [1]** 29/14
**ensure [1]** 2/22
**entered [3]** 11/23 15/21 15/24
**entering [1]** 15/21
**entire [1]** 5/8
**entitled [1]** 15/12
**episode [1]** 9/7
**equal [1]** 19/18
**equipment [2]** 24/8 24/12
**erroneous [1]** 15/1
**error [1]** 12/13
**Especially [1]** 33/10
**Esquire [1]** 1/15
**essence [2]** 19/20 22/14
**essentially [1]** 9/21
**estimated [1]** 12/23
**evaluation [1]** 19/20
**even [12]** 4/13 6/1 17/10 19/1 22/9

24/1 25/1 25/12 25/22 32/24 33/3 33/5
**events [2]** 7/22 7/19
**every [2]** 6/15 30/4
**everything [2]** 4/16 35/16
**evidence [2]** 24/13 24/19
**exact [3]** 5/23 5/24 9/4
**examine [1]** 32/12
**exceeded [1]** 14/16
**excellent [1]** 7/11
**except [1]** 6/16
**excess [1]** 29/10
**excessive [2]** 23/15
**execute [1]** 34/4
**exhibits [1]** 31/24
**experience [3]** 3/20 10/10 29/25
**explain [2]** 9/24 19/15
**explained [1]** 27/14
**explanation [3]** 7/14 7/16 7/19
**explanations [1]** 10/3
**exposure [1]** 4/23
**extensive [2]** 4/24 9/6
**extent [2]** 22/20 35/12
**extremely [3]** 3/22 8/6 8/7

## F

**F3d [1]** 11/21
**facing [2]** 22/13 28/21
**fact [3]** 5/3 13/7 33/1
**factor [1]** 15/15
**factors [5]** 6/14 15/13 21/19 33/8 34/9
**facts [9]** 4/25 7/3 8/1 8/14 11/7 11/8 11/22 21/19 27/2
**factual [3]** 7/4 29/22 32/1
**fair [2]** 19/21 24/20
**fairly [1]** 28/6
**fairness [1]** 23/18
**fall [1]** 9/22
**false [1]** 33/19
**far [5]** 14/11 14/13 15/11 23/12 25/6
**faulting [1]** 10/25 11/5
**federal [2]** 2/11 12/4
**Feleke [1]** 2/6
**fellow [1]** 23/9
**felonies [1]** 7/21
**few [1]** 34/19
**figure [2]** 3/9 30/6
**file [2]** 29/2 29/3
**files [1]** 32/15
**film [1]** 10/23
**final [1]** 17/7
**find [3]** 17/20 17/23 18/6
**fingerprints [1]** 8/9
**firearm [3]** 6/4 6/7 7/18
**firearms [8]** 6/5 6/8 7/15 7/15 8/8 33/21 33/23 34/2
**first [5]** 5/4 15/10 15/20 33/13 35/1
**five [2]** 22/13 23/1
**fixed [1]** 24/3
**followed [1]** 7/8
**foregoing [1]** 36/7
**forth [1]** 4/21
**found [3]** 12/12 24/13 34/4
**four [4]** 7/21 9/16 9/17 9/21 18/1 20/23 25/4 25/22 29/15
**Fourth [3]** 1/13 6/20 6/21
**frame [1]** 27/21
**framed [3]** 16/18 17/25 34/8

## F

**frankly [2]** 23/12 29/24
**free [3]** 14/5 14/7 14/22
**front [4]** 10/16 10/16 16/1 16/2
**frustrating [1]** 3/22
**full [1]** 23/14
**further [5]** 35/12 35/16 35/17 35/20 36/7
**furtherance [1]** 33/21

## G

**get [12]** 3/15 8/13 8/17 11/6 14/2 15/17 15/23 16/3 21/20 28/15 34/15 34/16
**gets [4]** 8/10 20/21 24/18 32/14
**getting [3]** 4/15 21/25 23/9
**give [8]** 2/23 3/9 3/11 3/15 18/15 23/14 30/9 35/8
**giving [1]** 5/6
**glad [1]** 15/6
**global [1]** 32/25
**go [6]** 15/5 17/11 18/9 18/21 35/1 35/1
**goes [3]** 14/13 28/12 33/12
**going [23]** 3/2 5/13 8/20 9/10 10/8 11/8 14/21 14/22 15/6 22/9 23/20 27/9 27/17 27/20 27/22 28/16 29/6 30/6 30/8 30/9 33/7 35/1 35/12
**good [6]** 2/2 2/9 2/16 15/19 22/8 22/12
**got [3]** 9/15 12/20 33/2
**government [30]** 1/12 3/9 3/23 3/25 4/22 4/24 5/6 7/7 7/8 8/15 9/9 11/6 12/5 12/18 12/21 14/3 14/16 15/20 16/8 18/16 18/24 24/4 24/8 25/24 28/3 28/10 31/16 32/10 33/2 35/18
**government's [4]** 3/8 4/11 4/15 7/13
**grace [1]** 28/11
**grams [4]** 21/7 21/9 26/10 32/9
**great [1]** 3/7
**greater [1]** 29/22
**grossly [1]** 23/3
**grounds [1]** 17/23
**guess [2]** 19/19 29/25
**guideline [27]** 3/8 5/23 5/24 13/22 16/20 16/22 17/4 17/17 17/19 20/17 20/18 21/13 21/14 23/25 25/3 25/6 25/10 25/13 25/23 26/9 26/20 27/16 27/21 28/13 29/11 29/13 31/1
**guidelines [11]** 5/8 5/15 6/17 10/2 10/4 10/4 19/25 20/23 20/25 25/3 25/19
**guilty [15]** 3/17 4/25 5/7 7/4 7/18 7/23 9/7 9/8 10/5 10/14 11/23 12/4 13/22 14/25 25/9
**gun [3]** 23/6 23/7 25/25
**guns [12]** 8/12 10/1 24/1 24/2 24/15 24/17 24/21 24/21 24/24 25/3 27/16 33/16
**guy [2]** 33/3 33/16

## H

**had [24]** 3/20 5/10 6/6 6/8 7/16 7/21 9/7 10/9 11/23 17/18 21/24 22/6 22/22 23/6 23/7 23/24 24/5 24/21 25/1 25/25 27/15 28/18 31/22 36/5
**happen [1]** 35/14
**happened [7]** 12/17 12/20 23/23 27/15 27/23 35/6 35/7

**happens [3]** 30/8 30/17 35/13
**hard [1]** 9/24
**harmed [1]** 14/2
**HARRISON [29]** 1/5 2/4 2/4 2/17 5/6 5/18 5/24 6/3 6/4 6/8 6/23 6/24 7/12 7/20 9/3 9/6 11/14 18/18 19/23 23/24 24/4 24/14 24/21 25/1 25/13 25/24 33/14 33/20 34/9
**Harrison's [9]** 6/13 8/5 11/6 15/25 32/21 31/4 31/25 33/15 33/18
**has [32]** 2/22 3/1 3/4 3/22 3/24 4/8 4/9 5/19 6/5 6/9 6/24 7/1 7/14 7/25 10/9 13/20 15/9 16/18 16/24 17/20 17/25 18/17 19/10 20/22 22/2 22/3 25/9 28/3 28/7 28/10 28/19 31/12
**hasn't [4]** 16/21 17/21 25/9 25/16
**have [59]**
**haven't [3]** 17/12 30/16 31/9
**having [8]** 3/20 7/12 7/24 8/22 10/6 15/24 24/6 33/13
**he [71]**
**he's [26]** 5/18 6/14 6/17 6/18 6/18 6/19 6/25 7/1 8/7 8/10 8/12 9/15 9/24 9/25 11/12 14/4 14/5 14/25 15/1 15/2 15/15 16/22 16/24 19/8 28/21 30/25
**head [1]** 15/11
**hear [2]** 11/18 22/11
**heard [2]** 17/1 19/13
**hearing [6]** 1/8 13/9 31/23 32/11 35/3 35/4
**help [2]** 23/10 34/13
**helpful [2]** 25/7 30/13
**here [10]** 3/7 4/23 5/16 8/4 10/5 10/12 12/17 13/16 32/22 32/23
**hereby [1]** 36/4
**hereto [1]** 36/10
**highlighted [1]** 26/6
**highly [1]** 3/21
**him [13]** 2/25 8/9 8/12 9/10 17/1 18/25 19/11 20/7 20/21 24/6 28/22 29/9 33/23
**himself [1]** 14/20
**his [44]**
**history [35]** 5/9 5/22 6/2 6/13 8/1 8/15 9/13 9/15 9/21 11/13 11/22 12/1 12/8 12/10 12/23 13/14 13/25 14/10 14/15 20/23 21/24 22/1 22/6 22/18 23/6 23/24 23/25 25/4 25/12 25/13 25/22 31/10 31/17 32/21 33/11
**hold [1]** 13/15
**holding [8]** 8/10 24/5 24/19 33/16 34/1
**homicide [1]** 31/8
**Honor [11]** 2/2 2/5 2/9 2/16 3/14 4/11 8/4 10/19 30/22 35/19 35/22
**HONORABLE [1]** 1/9
**hope [5]** 25/7 28/15 32/14
**hopefully [2]** 34/19 35/13
**hour [1]** 8/5
**how [18]** 5/10 5/18 7/6 7/20 8/17 8/20 19/14 20/16 21/1 23/13 23/13 24/8 25/6 27/2 27/11 27/12 30/23 33/9
**huge [1]** 6/22
**hundred [2]** 17/13 17/14
**hypothetical [5]** 21/5 23/21 23/23 26/8 28/12
**hypotheticals [2]** 21/11 31/6

## I

**I'd [2]** 3/9 11/19
**I'll [7]** 15/5 15/10 16/16 17/11 27/11 35/3 35/10
**I'm [27]** 2/24 3/2 6/2 6/4 6/7 10/25 11/5 12/18 13/1 13/15 15/5 15/6 21/19 22/8 23/17 23/18 25/18 25/18 26/10 26/13 27/17 29/19 30/6 30/7 30/9 33/17 34/1
**I've [5]** 8/24 30/2 30/3 30/3 35/5
**idea [2]** 31/19 31/19
**identical [1]** 6/4
**identify [1]** 2/8
**III [1]** 17/20
**illegally [1]** 29/9
**imagine [1]** 4/18
**impermissible [1]** 22/5
**important [1]** 11/6
**imposed [1]** 3/5
**impression [1]** 17/9
**inappropriate [1]** 21/21
**incarcerated [2]** 5/10 5/19
**include [3]** 12/22 13/24 14/9
**includes [2]** 16/9 29/8
**including [1]** 28/22
**increasing [1]** 19/17
**indictment [4]** 19/24 21/9 25/2 31/20
**indulgence [1]** 27/25
**ineffectiveness [1]** 13/9
**influence [1]** 28/9
**information [1]** 35/8
**inmate [2]** 22/24 23/9
**intents [1]** 8/6
**interest [1]** 32/16
**interested [1]** 17/8
**interesting [1]** 21/3
**interpretation [1]** 6/16
**interpreting [1]** 6/17
**Investigations [1]** 2/11
**involved [3]** 6/8 22/23 33/22
**involvement [2]** 22/20 23/7
**irrelevant [2]** 33/10 33/14
**is [107]**
**isn't [1]** 7/3
**issue [8]** 13/8 21/16 26/6 26/25 29/17 29/18 32/25 34/7
**issues [1]** 10/25
**it [77]**
**it's [23]** 4/3 7/1 7/9 7/16 9/20 17/10 21/3 21/14 24/3 26/23 28/6 29/13 29/23 31/10 31/12 31/13 32/24 32/25 33/12 34/21 35/2 35/9 35/9
**its [3]** 7/8 28/10 35/9
**itself [1]** 16/18
**IV [1]** 17/20

## J

**jail [5]** 7/2 8/3 10/21 11/9 33/4
**Jenkins [2]** 25/8 25/25
**Jenkins's [1]** 25/25
**Jones [4]** 1/19 36/2 36/13 36/14
**jot [1]** 17/12
**judge [14]** 1/9 1/10 3/3 4/6 4/7 4/7 4/18 5/11 11/19 14/25 23/20 32/7 32/16 32/20
**judge's [1]** 17/9
**judges [1]** 4/9
**July [5]** 11/21 30/15 30/18 35/11 35/14

**J**

**June [4]** 2/20 30/16 30/18 35/14
**June 21 [2]** 30/16 30/18
**June 21st [1]** 35/14
**just [24]** 3/14 3/15 3/24 5/19 5/21 7/1 7/7 15/15 16/9 17/1 20/9 24/12 25/5 25/16 27/14 27/25 29/5 29/22 32/6 32/16 34/1 34/22 34/25 35/10

**K**

**kept [1]** 34/3
**key [1]** 26/17
**kind [2]** 3/15 23/5
**knew [9]** 8/20 9/9 12/11 12/18 12/21 13/5 13/5 13/12 14/9
**know [24]** 4/10 4/14 4/15 4/15 8/4 12/1 12/10 12/11 19/16 24/11 24/12 24/23 24/24 26/5 28/14 29/2 29/21 30/23 30/24 30/25 31/11 34/12 34/18 34/23
**knowing [3]** 11/8 11/11 15/21

**L**

**large [3]** 6/9 26/1 28/12
**largely [1]** 16/19
**last [2]** 11/20 12/20
**later [1]** 12/3
**law [3]** 1/16 10/16 10/16
**learn [1]** 12/2
**least [3]** 10/9 18/14 26/12
**lectern [1]** 2/8
**led [1]** 12/19
**left [1]** 24/18
**LEON [1]** 1/9
**less [2]** 23/15 25/23
**let [3]** 10/8 11/17 19/22
**Let's [2]** 5/21 18/11
**level [6]** 19/24 19/25 20/19 20/23 21/8 28/9
**levels [2]** 20/1 20/20
**life [1]** 31/21
**lifelong [1]** 6/14
**like [11]** 3/23 7/17 11/19 23/12 25/8 26/18 27/23 29/14 32/2 35/1 35/10
**likely [1]** 29/23
**likewise [1]** 6/21
**limited [2]** 10/10 23/7
**line [2]** 26/21 30/4
**linking [1]** 8/9
**list [1]** 31/16
**literally [1]** 24/19
**little [1]** 15/11
**long [2]** 3/1 4/9
**look [4]** 6/24 16/16 17/11 18/9
**looking [4]** 13/15 22/18 26/13 26/16
**looks [1]** 23/12
**lose [1]** 3/6
**lost [1]** 30/3
**lot [1]** 15/15
**lots [1]** 30/2
**loved [1]** 31/21

**M**

**Macchiaroli [21]** 1/12 2/10 3/13 11/17 14/19 15/14 16/3 16/18 17/21 17/25 19/13 21/22 22/14 24/16 24/23 27/5 27/12 29/7 29/20 30/10 30/21

**machine [3]** 1/23 36/4 36/9
**Macovina [2]** 2/12 31/24
**made [4]** 3/4 14/20 21/22 22/3
**magazines [1]** 6/5
**major [3]** 19/1 25/14 26/1
**make [4]** 3/3 15/12 15/22 28/3
**Makes [2]** 33/8 33/11
**making [2]** 10/11 21/22
**man [2]** 2/21 7/21
**mandatory [4]** 19/5 22/13 28/24 34/11
**many [2]** 5/18 33/9
**Mark [2]** 13/3 13/4
**Marquete [1]** 11/21
**Maryland [8]** 6/18 6/19 9/10 10/1 10/1 27/23 28/23 33/10
**mathematical [1]** 8/21
**matter [6]** 29/22 31/2 31/5 31/6 31/8 32/9
**matters [1]** 31/7
**max [2]** 3/21 4/13
**maximum [4]** 3/19 4/12 4/23 29/10
**may [9]** 1/5 4/20 5/15 10/21 12/2 24/10 24/11 31/6 36/11
**me [20]** 2/11 3/4 5/5 6/7 7/3 8/19 9/13 9/17 10/8 10/16 10/17 10/17 11/17 16/2 18/2 19/22 23/12 23/16 30/13 35/8
**mean [5]** 5/20 14/3 22/20 32/10 34/12
**means [1]** 32/10
**Mehta [1]** 32/7
**memo [3]** 7/13 16/23 30/10
**memorandum [4]** 21/12 27/4 29/4 34/20
**mention [2]** 8/7 33/3
**might [4]** 16/3 19/20 28/15 34/15
**minimal [1]** 4/24
**minimum [7]** 10/3 19/4 19/5 22/13 23/6 28/24 34/11
**minus [2]** 19/25 20/20
**minute [1]** 35/11
**minutes [2]** 17/2 17/2
**misdemeanor [1]** 10/15
**misdemeanors [1]** 3/17
**mister [1]** 19/2
**moment [1]** 27/25
**month [2]** 24/3 26/22
**months [25]** 3/19 5/8 5/25 6/1 7/7 7/21 20/21 20/24 20/25 21/14 23/3 23/16 25/4 25/11 25/14 25/21 26/21 26/24 26/25 27/10 31/1 31/10 31/14 33/12 33/13
**more [8]** 4/7 10/14 10/18 15/25 17/10 29/23 30/2 30/23
**Moreover [1]** 32/24
**most [2]** 10/22 17/8
**motion [3]** 4/4 4/4 29/3
**move [1]** 18/11
**moved [1]** 4/9
**Mr [59]**
**Mr. [6]** 6/8 22/14 25/10 29/20 30/21 34/7
**Mr. Becker's [1]** 34/7
**Mr. Harrison [1]** 6/8
**Mr. Jenkins's [1]** 25/10
**Mr. Macchiaroli [3]** 22/14 29/20 30/21
**Ms [1]** 2/6
**much [8]** 5/10 8/13 23/13 23/14 27/2

**28/20 29/7 30/2**
**multiple [1]** 14/9
**Murray [13]** 11/21 13/8 14/12 14/13 14/14 14/19 15/5 15/8 15/9 15/11 18/19 32/18 32/20
**must [1]** 33/16
**my [20]** 2/13 3/16 10/12 10/24 15/10 16/2 16/4 16/9 16/23 17/10 27/8 29/25 30/2 30/4 30/7 32/6 32/17 35/6 36/9 36/10
**myself [1]** 32/6

**N**

**N.W [1]** 1/20
**name [1]** 36/11
**narcotics [3]** 6/9 31/25 34/1
**near [1]** 22/10
**necessary [1]** 3/11
**need [3]** 16/3 28/2 35/15
**needed [1]** 34/23
**neighborhood [1]** 25/11
**neither [1]** 16/14
**never [3]** 24/14 26/22 33/19
**new [2]** 2/13 33/15
**next [1]** 34/19
**nine [2]** 6/3 9/15
**no [28]** 1/4 2/21 4/7 7/16 7/19 8/21 10/2 10/3 12/13 13/19 16/7 18/6 18/20 21/24 22/6 23/6 24/12 31/18 31/19 32/25 33/8 33/11 33/11 33/18 33/18 34/2 35/19 35/22
**nobody's [1]** 8/11
**none [3]** 21/24 24/5 31/7
**normally [2]** 9/2 31/22
**not [47]**
**note [3]** 3/22 9/23
**notes [1]** 36/9
**nothing [3]** 7/15 7/16 21/8
**November [1]** 26/14
**now [15]** 7/11 7/23 9/20 12/2 12/11 12/12 13/13 15/6 15/12 15/22 15/24 16/10 21/11 21/22 22/12
**number [8]** 8/17 10/25 19/15 21/1 22/21
**numbers [1]** 27/13
**NW [2]** 1/13 1/16

**O**

**object [2]** 7/3 10/13
**objection [1]** 33/18
**obviously [2]** 4/17 32/11
**occur [2]** 32/22 32/23
**occurred [1]** 35/9
**October [1]** 26/14
**October 2018 [1]** 26/14
**off [2]** 15/10 27/22
**offender [14]** 6/15 6/17 6/18 6/19 9/1 9/10 9/25 10/1 10/4 18/24 18/25 19/9 19/18 33/13
**offense [8]** 7/18 11/10 19/24 19/25 20/19 20/23 21/8 28/9
**offenses [3]** 5/9 20/10 20/12
**offer [2]** 19/22 32/25
**office [12]** 1/12 2/13 12/6 12/14 14/4 15/1 17/20 17/23 23/22 26/5 26/20 28/11
**officer [1]** 2/5

**O**

OFFICES [1] 1/16
official [4] 1/19 36/2 36/8 36/14
often [1] 24/17
oh [1] 33/3
okay [18] 14/1 15/19 17/15 18/11
18/21 22/13 22/15 23/22 24/3 24/19
24/23 25/5 26/5 27/11 28/5 29/6
30/19 35/3
old [1] 28/14
once [1] 8/19
one [25] 2/13 4/14 5/7 6/3 6/4 7/22
11/25 14/23 14/24 14/24 14/24 15/13
15/15 15/15 17/13 20/5 20/17 20/24
21/5 23/6 24/18 25/22 26/12 27/25
29/3
only [15] 2/22 4/22 7/17 7/20 11/15
14/24 15/13 20/17 21/16 22/16 23/6
23/13 24/6 26/25 27/3
operation [1] 22/21
opinion [4] 11/20 15/9 17/10 22/7
opinions [1] 22/7
opportunity [2] 3/6 5/7
oppose [1] 3/12
oral [1] 17/10
original [1] 21/3
originally [1] 26/5
other [11] 5/12 8/11 13/12 15/16 24/22
25/2 29/10 29/14 31/2 32/1 33/24
out [14] 3/24 3/24 3/24 4/13 4/21
18/12 18/15 25/8 26/5 26/8 26/11 30/6
34/12 35/12
outside [1] 24/15
over [16] 4/12 4/14 5/16 6/10 6/18
6/19 7/2 7/2 7/5 8/22 21/6 25/5 32/24
35/5 35/7 35/9
overall [1] 4/25
own [1] 33/6

**P**

p.m [1] 35/25
page [1] 7/13
pages [1] 36/7
paperwork [3] 5/4 5/12 5/12
paragraph [8] 13/20 16/6 16/12 16/13
21/4 26/17 26/17 33/17
part [4] 10/7 12/7 13/13 33/8
partially [1] 10/25
particular [1] 21/18
parties [3] 2/7 25/20 28/8
pause [1] 28/1
PCP [1] 7/23
pending [10] 4/9 11/24 12/11 12/22
13/5 31/8 31/15 31/17 33/4 33/9
people [2] 6/22 24/22
people's [1] 32/1
percent [2] 17/14 17/14
permission [1] 7/8
person [4] 10/12 21/24 22/1 23/5
photos [1] 34/5
pick [1] 34/2
pie [1] 4/14
place [2] 30/18 35/5
places [1] 27/7
plain [1] 12/13
Plaintiff [1] 1/3
plan [1] 35/13

player [2] 25/15 26/1
plea [33] 4/25 5/4 5/12 5/12 9/8 10/7
11/23 11/24 12/5 12/9 12/9 12/15
12/20 13/11 13/13 14/6 15/4 15/21
16/1 16/4 16/5 16/17 21/5 25/10 25/20
28/4 28/18 29/8 31/14 32/11 32/13
32/25 33/18
plead [3] 5/7 9/7 9/8
pleaded [2] 25/9 31/15
pleading [3] 20/4 31/20
pleadings [1] 17/5
please [1] 2/7
pled [15] 3/17 7/4 7/18 7/23 10/5
10/14 12/4 13/22 14/24 19/23 20/9
20/10 20/11 25/1 27/15
plus [3] 20/21 31/13 35/16
PMB [1] 1/16
point [5] 4/6 13/11 24/24 25/8 33/12
pointing [1] 22/25
points [3] 6/3 9/16 20/1
politely [1] 30/23
poor [1] 33/16
position [1] 34/23
possessed [2] 24/15 33/20
possession [2] 3/18 22/22 33/25
possibility [1] 28/22
possibly [1] 28/24
post [1] 22/23
Potential [1] 3/19
potentially [2] 28/19
powder [1] 24/9
power [1] 2/23
practiced [1] 10/6
prepared [1] 26/13
preparing [1] 30/13
preponderance [2] 32/3 32/4
present [3] 2/4 2/5 2/10
presented [2] 5/4 23/22
presentence [5] 18/6 21/3 26/6 26/12
28/7
presided [2] 6/10 8/22
pretty [2] 14/11 14/18
previous [1] 16/13
prior [6] 5/17 5/22 7/21 14/20 14/21
18/22
probably [7] 8/19 10/20 10/21 30/1
30/15 30/17 35/11
probation [17] 2/5 12/6 14/4 15/1
17/20 17/23 18/3 18/12 18/14 18/15
23/22 26/5 26/20 28/10 31/3 32/8 35/5
probation's [1] 21/13
problem [1] 19/1
proceeding [1] 36/4
proceedings [4] 1/23 35/24 36/5 36/8
process [1] 10/11
produced [1] 1/24
proffer [3] 7/5 32/11 33/18
proffers [1] 5/22
progressed [1] 28/8
prohibited [1] 3/18
prosecuted [1] 28/23
prosecutor [3] 11/1 11/2 11/4
prosecutorial [1] 10/10
prospective [1] 30/4
protected [1] 33/23
protocol [1] 7/8
proves [1] 32/10

provides [1] 16/7
provision [1] 26/9
provisions [1] 16/20
PSR [5] 13/16 13/16 13/24 31/6 33/17
public [1] 4/3
purchasing [1] 7/23
purposes [3] 4/24 8/6 9/6
push [1] 4/21
pushed [3] 3/24 3/24 3/24
pushing [1] 14/10
put [2] 7/13 22/15

**Q**

qualify [1] 10/14
quantities [1] 26/1
quantity [2] 21/7 26/7
quarreling [1] 9/3
question [8] 8/19 10/9 13/21 17/18
19/14 23/13 24/16 27/12
questions [6] 3/10 8/12 10/3 27/3
35/18 35/20
quite [2] 13/10 19/10

**R**

raised [2] 12/13 13/7
range [21] 3/8 5/23 5/24 14/16 14/16
20/17 20/18 20/24 21/13 21/14 23/25
25/3 25/10 25/14 25/21 25/23 26/20
27/10 28/13 29/11 31/1
reached [1] 31/9
read [1] 15/5
reading [3] 7/12 16/23 33/17
realizing [1] 2/19
really [1] 16/25
reason [2] 3/10 13/19
reasons [4] 22/9 22/12 22/16 22/25
receive [3] 9/1 34/18 35/3
received [1] 21/6
recess [1] 35/23
recollection [5] 10/12 10/24 16/4 16/5
16/10
recommendation [3] 18/3 18/13 18/15
record [4] 2/8 3/1 17/6 28/3
recorded [1] 1/23
reductions [1] 29/15
reference [4] 7/17 16/19 25/19 27/21
refused [1] 24/22
regard [2] 24/20 29/7
regarding [1] 3/16
relevant [3] 31/23 31/25 32/8
rely [1] 3/3
remand [1] 13/8
remanded [1] 13/9
remember [2] 13/2 18/10
Remind [1] 9/13
repeatedly [1] 10/13
report [5] 18/6 21/4 26/6 26/12 28/7
reported [1] 36/4
Reporter [4] 1/19 1/19 36/2 36/14
request [1] 14/23
required [1] 34/21
reset [1] 15/6
residence [3] 6/6 7/25 33/24
resident [1] 24/15
resolved [2] 11/11 32/24
resolving [1] 11/1
respect [5] 14/2 14/13 28/12 30/23

**R**

respect... [1] 34/6
respond [1] 30/21
response [1] 5/4
responsibility [3] 11/7 20/1 20/21
restriction [1] 16/8
review [2] 15/8 34/16
reviewing [1] 34/22
revised [1] 26/14
revisions [1] 26/15
RICHARD [1] 1/9
right [14] 9/20 10/14 14/1 14/6 19/4
22/12 27/19 29/12 30/5 30/7 30/20
34/3 34/14 35/15
RJL [1] 1/4
robbed [1] 33/24
Robert [3] 1/15 1/16 2/16
Rodriguez [1] 2/6
Rodriguez-Feleke [1] 2/6
role [2] 24/1 24/2
roof [1] 10/2
Room [1] 1/20
rounds [1] 35/1
Rowe [2] 2/12 31/23
RPR [2] 1/19 36/14
rule [1] 19/8
run [1] 3/19
RUSSELL [2] 1/5 2/4

**S**

said [22] 5/11 5/15 12/8 12/8 12/10
12/12 14/20 16/11 16/12 16/14 17/20
17/23 18/17 20/9 21/7 23/21 25/16
26/18 33/20 34/24 35/10 36/8
same [11] 4/7 5/23 5/24 6/7 17/5 21/24
21/25 25/13 27/12 29/6 33/14
saving [1] 28/11
saw [1] 5/10
say [16] 4/7 4/10 4/22 7/15 10/8 10/9
13/10 17/3 17/4 19/13 28/3 28/16 29/6
30/23 34/1 34/23
saying [6] 11/25 12/18 14/4 25/19
28/14 29/21
says [5] 17/19 25/20 26/23 29/9 32/16
scale [2] 6/9 9/5
scheduling [1] 15/7
science [1] 9/4
score [2] 5/22 6/2
search [1] 34/4
second [4] 13/16 20/9 25/16 35/2
secret [1] 4/3
security [1] 7/16
see [7] 7/14 9/2 15/8 30/8 30/17 32/18
34/5
seeing [2] 3/21 3/21
seems [1] 3/23
seen [7] 8/24 13/16 13/17 13/19 18/3
18/5 24/18
selling [1] 24/4
SENIOR [1] 1/9
sense [3] 9/6 10/17 10/20
sentence [33] 2/21 2/23 3/4 4/12 5/2
7/9 7/20 8/16 9/2 15/23 15/25 16/8
19/12 19/17 19/21 20/25 21/5 21/23
22/1 23/2 23/5 24/3 26/4 26/8 26/9
28/12 28/25 29/9 29/13 30/7 33/2 33/7
34/9

**S**

sentenced [3] 6/22 25/9 25/17
sentencing [27] 1/8 2/20 2/25 4/4 4/15
7/3 7/13 8/20 15/7 21/12 21/23 26/3
27/4 27/6 27/7 28/20 29/4 30/10 30/14
30/15 33/2 33/4 34/8 34/20 35/4 35/4
35/14
sentencings [1] 8/22
separate [4] 3/1 3/2 3/2 7/22
serious [3] 10/15 10/18 22/24
served [1] 5/18
set [3] 30/16 35/3 35/10
seven [1] 25/5
sharp [2] 7/2 10/13
shooting [1] 7/22
shorthand [3] 1/23 36/5 36/9
should [10] 13/17 14/5 14/8 15/4
22/10 25/6 27/9 27/10 27/17 27/18
show [1] 11/13
side [1] 16/14
sides [1] 34/14
significant [1] 14/18
similar [3] 9/3 11/22 11/25
simple [2] 3/18 22/15
since [1] 10/9
sir [1] 30/20
situation [2] 19/1 21/23
six [9] 3/19 6/5 6/8 7/14 22/14 23/15
23/15 25/5 32/7
Sixty [1] 5/25 6/1
sky [1] 4/15
sliding [1] 9/5
so [35] 2/24 3/9 3/12 4/9 4/23 6/22
9/17 9/22 11/10 12/12 13/13 14/1 14/1
15/8 15/15 17/6 17/10 17/24 18/25
20/22 20/24 24/23 25/5 25/6 26/3
26/10 27/2 27/4 27/16 29/1 29/7 29/23
31/7 34/25 35/13
some [10] 3/10 3/15 4/6 15/6 21/20
21/23 30/3 30/3 34/3 34/4 35/8 35/16
somebody [5] 7/2 8/3 8/25 32/5 33/4
someone [2] 22/6 34/1
something [8] 12/2 12/3 13/11 22/4
31/16 32/15 34/23 34/24
somewhat [1] 25/7
somewhere [4] 8/25 9/3 9/11 25/11
sort [1] 16/18
Special [1] 2/12
specific [1] 16/6
specifically [2] 11/8 16/7
stabbed [2] 10/12 33/3
stabbing [2] 7/1 8/3
stand [2] 17/24 35/23
standard [2] 32/3 32/4
start [3] 5/3 5/21 11/19
stated [2] 22/15 33/23
statement [2] 33/19 33/19
states [8] 1/1 1/3 1/10 2/3 2/10 11/21
18/6 36/3
status [1] 18/24
statute [2] 5/21 26/23
statutory [1] 29/10 33/8
still [2] 6/25 31/10
straight [3] 19/23 20/10 25/1
Street [1] 1/13
stretching [1] 15/11
strong [1] 8/7
stronger [1] 8/13

**Sub** [1] 17/19
submit [5] 34/25 35/15 35/16
submitted [1] 5/13
subscribed [1] 36/10
subsequently [1] 12/23
substantial [2] 4/12 4/23
suggested [1] 15/3
suggesting [3] 12/16 14/13 18/2
Superior [28] 2/20 3/3 3/16 3/20 3/23
4/3 4/17 7/5 10/6 10/6 10/11 11/23
12/5 12/7 12/12 12/19 13/6 13/21 14/9
15/4 15/8 27/7 30/8 30/16 31/15 33/10
35/5 35/8
supplement [7] 7/14 27/3 27/5 29/4
30/9 30/10 34/20
supplements [1] 35/17
supports [1] 21/9
sure [1] 26/10
surveillance [1] 32/1

**T**

table [1] 21/17
take [4] 7/6 16/16 24/2 34/15
takes [3] 27/7 30/18 35/5
Taking [1] 9/11
talk [2] 3/7 29/1
talked [4] 5/9 5/10 8/21 17/2
talking [8] 8/5 8/12 21/11 25/18 30/24
30/25 31/11 32/5
talks [2] 7/18 16/6
taped [1] 8/11
tell [6] 10/17 10/20 10/20 22/8 24/15
26/15
telling [2] 23/17 23/18
ten [4] 5/16 17/2 20/21 20/23
term [1] 7/17
terms [4] 14/6 22/15 24/25 26/3
testify [1] 31/24
testimony [1] 36/5
than [11] 5/12 8/13 10/15 10/18 15/25
17/11 23/15 23/15 25/23 28/20 28/25 30/2
Thank [2] 11/17 30/20
that [166]
that's [24] 6/20 7/4 7/4 10/3 12/16
14/18 16/9 17/18 17/24 18/4 18/13
18/25 19/19 21/15 21/17 21/19 22/11
23/20 25/5 25/7 25/21 26/19 32/14
33/19
their [1] 3/4
them [2] 34/1 34/2
then [14] 5/15 9/22 11/24 12/4 12/5
12/6 12/20 13/12 13/13 14/15 20/16
22/23 29/11 35/10
theory [1] 33/15
there [30] 4/12 4/14 4/20 4/23 6/11
6/22 7/17 8/7 8/9 10/25 12/12 14/5
14/7 16/7 16/11 20/3 21/8 22/4 22/8
27/5 28/11 28/19 29/24 30/17 31/8
32/19 32/24 34/2 34/10 34/12
there's [12] 2/20 2/21 5/11 5/11 8/21
16/6 21/4 24/12 31/17 32/21 32/25
33/11
Thereupon [1] 35/24
these [5] 2/6 28/21 32/16 34/2 34/11
they [20] 7/17 12/11 12/12 12/22 13/11
13/12 14/9 15/3 16/12 16/14 18/6 24/6
24/7 26/7 26/8 26/8 28/18 31/3 31/9

**T**

they... [1] 34/3
they're [4] 9/16 19/7 19/8 34/12
thing [1] 29/7
things [3] 15/16 22/24 26/3
think [20] 4/8 9/4 11/15 14/10 14/12
14/12 15/11 15/20 17/7 17/15 19/1
24/20 25/7 26/3 27/24 28/2 28/6 29/1
32/8 34/7
thinking [2] 8/18 30/13
thinks [1] 22/16
this [95]
those [19] 3/19 3/21 3/21 6/11 6/12
8/14 11/7 11/8 12/6 12/21 20/18 22/4
22/5 22/24 24/17 24/24 26/3 27/2
27/13
though [2] 3/20 19/11
thought [4] 8/24 9/5 22/4 30/5
three [3] 7/21 29/15 31/13
through [5] 5/8 10/2 29/1 29/2 30/13
time [12] 3/2 3/2 3/13 4/23 5/10 7/22
12/21 15/6 15/8 22/22 23/19 28/21
tittle [1] 17/12
today [5] 2/11 2/24 2/25 17/13 17/13
today's [3] 30/12 34/17 35/3
told [1] 35/5
too [2] 30/11 35/12
took [2] 21/6 26/8
top [1] 15/10
toward [1] 18/23
track [2] 3/1 35/6
trafficker [1] 7/22
trafficking [3] 7/15 8/8 33/22
transcribed [1] 36/9
transcript [10] 1/8 1/23 32/15 34/15
34/16 34/17 34/18 34/22 35/3 36/8
transcription [1] 1/24
transpired [1] 28/7
treat [2] 18/25 19/11
treated [2] 6/4 6/7
trial [2] 11/13 31/9
tried [3] 17/12 19/15 23/21
True [1] 10/23
try [1] 28/9
trying [4] 13/1 21/19 22/8 23/10
Twenty [2] 9/21 9/22
twilight [1] 33/16
two [18] 3/17 7/22 8/19 9/24 9/25 10/2
11/23 12/11 20/1 20/1 20/10 20/11
20/20 27/3 31/13 34/19 34/25 35/2
Two-time [1] 7/22

**U**

U.S [6] 1/12 1/20 2/13 12/14 31/3 32/8
ultimately [1] 33/12
under [14] 10/15 10/18 14/6 18/7
19/25 20/18 20/25 22/17 23/3 25/3
25/5 26/9 27/2 28/21
understand [6] 15/13 15/17 23/10
26/18 27/19 34/6
understanding [1] 3/16
UNITED [7] 1/1 1/3 1/10 2/3 2/10
11/21 36/3
unjust [1] 23/3
unless [1] 29/9
unlikely [1] 3/21
unrehabilitated [1] 5/19

until [3] 12/13 15/7 27/6
up [13] 5/3 8/4 9/18 12/19 19/14 19/23
20/10 21/1 25/1 27/13 31/24 33/2 34/2
upfront [1] 5/13
upon [1] 3/3
upward [22] 5/14 7/9 7/25 11/15 14/5
14/8 16/9 16/13 16/19 17/14 18/7 18/7
22/25 23/11 27/1 27/9 27/17 27/18
27/20 29/22 30/1 34/10
upwards [1] 29/16
use [1] 14/8 17/19
used [3] 14/14 21/7 24/9
using [2] 19/19 26/7

**V**

variance [29] 3/7 3/11 5/14 5/20 8/1
11/15 14/5 14/8 14/22 14/23 14/23
15/2 15/14 16/9 16/22 17/3 17/3 17/3
17/14 17/24 18/7 21/18 21/20 22/25
23/11 27/1 27/9 27/10 29/22
varied [2] 30/1 30/1
vary [12] 7/9 9/18 22/9 22/9 22/12 27/9
27/17 27/18 27/20 29/16 34/10 34/10
varying [1] 8/23
verdict [1] 31/9
version [1] 21/6
versus [2] 2/4 11/21
very [14] 5/5 5/9 9/24 11/22 11/25 21/3
21/22 22/2 22/3 22/23 28/17 29/19
30/22 32/25
vicious [1] 23/8
victims [1] 10/21
videotaped [1] 8/11
violation [1] 5/23

**W**

wait [4] 2/24 2/24 30/8 30/17
waiting [2] 11/12 34/3
waiver [3] 29/8 29/9 29/12
want [16] 3/6 4/21 5/3 9/6 9/8 9/17
15/23 17/6 18/12 22/11 23/14 23/16
27/3 29/3 29/4 30/16 30/21 34/16
34/22 35/11
wanted [3] 4/16 9/7 30/12
wants [2] 15/25 30/10
warrant [1] 34/4
warranted [4] 11/15 22/17 23/2 27/1
was [63]
Washington [4] 1/5 1/14 1/17 1/21
wasn't [7] 9/9 10/23 11/4 12/13 15/22
32/24 34/3
waste [1] 3/12
wasted [1] 2/24
wasting [1] 23/18
way [10] 2/21 2/22 11/1 14/2 24/25
28/2 28/4 28/7 33/3 34/13
ways [1] 16/24
we [28] 2/3 3/12 4/21 5/3 5/15 5/16 9/7
10/5 10/21 12/1 12/2 12/10 12/10 15/6
15/23 15/23 16/2 16/3 17/2 17/24
24/15 24/23 30/14 31/8 31/18 31/22
31/22 33/9
we're [8] 5/1 5/13 5/14 14/21 14/22
14/22 33/1 35/1
we've [2] 5/12 8/20
weapon [1] 3/18
weapons [1] 22/21

weeks [6] 8/19 32/7 34/19 34/19 34/25
35/2
weight [1] 15/9
welcome [6] 2/15 2/18 27/4 27/5 29/2
29/3
well [13] 2/13 9/20 13/8 15/22 16/16
17/18 20/11 21/2 24/1 25/2 26/4 27/15
29/19
went [2] 5/8 12/5
were [21] 5/5 5/17 11/22 12/22
16/12 19/11 20/16 21/2 24/24 25/1
25/13 25/22 26/7 26/15 28/17 29/16
31/8 34/2 34/3 34/4
weren't [3] 7/17 11/2 12/24
WFO [1] 8/10
what [58]
what's [1] 17/11
whatever [1] 34/24
whatsoever [2] 7/16 31/19
when [18] 5/1 5/3 7/6 7/18 7/21 8/2
9/2 11/10 10/14 22/22 23/21 24/5 26/5
30/14 31/17 32/20 33/10 33/25
whenever [1] 30/1
where [16] 9/7 17/24 21/24 22/23
23/20 24/11 24/18 25/6 26/10 27/16
29/14 31/23 32/11 32/14 34/3 34/12
whereof [1] 36/10
whether [6] 21/17 23/14 24/16 27/1
34/23 35/8
which [20] 5/7 10/6 11/5 13/16 14/5
14/8 14/24 16/13 17/18 18/6 20/22
22/2 22/3 22/20 28/6 28/23 29/8 30/15
33/17 33/22
while [4] 11/12 33/4 34/15 35/13
who [7] 6/4 6/8 13/1 22/6 23/6 23/7
23/8
who's [2] 4/7 4/10
whole [2] 19/1 34/3
whose [1] 24/24
why [16] 3/10 4/6 5/6 5/20 7/14 11/14
13/19 21/19 21/20 22/16 22/25 23/2
23/10 23/15 31/15 34/11
will [14] 2/7 2/21 2/24 3/4 3/22 10/20
15/17 28/3 30/17 31/3 34/18 35/2
35/11 35/14
Winstead [2] 18/20 18/21
wire [1] 32/1
wish [1] 35/17
wished [1] 34/21
withdraw [2] 9/8 32/16
within [1] 9/22
without [3] 19/11 27/22 29/21
witness [2] 10/22 36/10
won [1] 30/3
won't [3] 2/24 3/12 27/6
word [3] 6/16 17/3 17/4
words [2] 25/2 29/10
worse [2] 28/20 28/25
would [51]
wouldn't [4] 10/14 13/19 19/4 20/11
writing [2] 17/11 17/12
written [2] 26/13
wrongful [1] 22/5

**Y**

yardstick [1] 19/19
year [6] 4/14 4/16 6/10 12/20 19/11

# Y

**year... [1]** 22/14

**years [24]** 5/16 5/16 5/18 7/10 8/16 8/22 8/24 9/1 9/5 9/11 9/24 9/25 10/2 19/4 19/6 19/7 19/15 22/10 22/13 23/1 23/1 25/5 26/4 28/24

**yes [3]** 3/14 9/19 25/25

**yet [3]** 25/9 25/17 31/9

**you [104]**

**you'll [2]** 34/22 34/25

**you're [13]** 9/17 14/13 15/11 15/12 21/11 22/9 23/18 26/21 27/4 27/9 29/2 29/3 34/21

**you've [1]** 13/16

**your [33]** 2/2 2/5 2/9 2/16 3/14 4/11 5/4 8/4 10/19 11/20 12/1 12/10 14/20 15/9 15/12 21/12 22/1 22/2 22/6 22/12 22/18 23/19 27/3 28/19 29/1 29/3 29/4 30/9 30/22 33/6 34/20 35/19 35/22

**yourself [1]** 2/8

# Z

**zero [4]** 5/21 5/22 25/12 32/10

**zips [1]** 6/6

**zone [2]** 9/22 33/17